# United States Court of Appeals
## For the First Circuit

No. 04-2514

OLGERT TOPALLI,

Petitioner,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before
Boudin, <u>Chief Judge</u>,
Lynch and Howard, <u>Circuit Judges</u>.

<u>Sunit K. Joshi</u> and <u>Joshi & Associates, P.C.</u> on brief for petitioner.
<u>Karen A. Smith</u>, Attorney, Tax Division, U.S. Department of Justice, <u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division, and <u>Douglas E. Ginsburg</u>, Senior Litigation Counsel, on brief for respondent.

August 2, 2005

**LYNCH**, **Circuit Judge**.    The petitioner presents a sympathetic case.  Olgert Topalli, a 24-year-old Albanian man, was arrested and beaten multiple times for his participation in anti-government rallies.   He escaped Albania with his sister after criminals attempted to kidnap her and force her into prostitution. In the end, the strict standard of review under which we operate and the clear language of the immigration statutes compel us to deny the relief sought: reversal of the agency's[1] decision not to grant asylum, withholding of removal, or relief under the Convention Against Torture (CAT).  We deny the petition.

## I.

Because the Board of Immigration Appeals (BIA), though not the Immigration Judge (IJ), found Topalli credible, we recount the facts as Topalli rendered them.

Topalli and his family were from Korce, Albania.  In 1999 he joined the Albanian Democratic Party (ADP) (the opposition party to the Socialist government) as a full member after having participated in the party's youth forum for the previous four years.  As a member of the ADP, Topalli was arrested and detained by the police seven times between 1999 and 2001.  Four of those arrests were for Topalli's participation in anti-government

---

[1]  Alberto Gonzales was sworn in as Attorney General of the United States on February 3, 2005.  We have substituted him for John Ashcroft, previous holder of that office, as the respondent.  See Fed. R. App. P. 43(c)(2).

rallies, which were illegal because the demonstrators did not obtain a permit. The three other times, Topalli was "arrested on the streets for no reason . . . because [the police] would remember [him]." None of the periods of detention lasted more than 24 hours. The police did not have the right to detain anyone without pressing charges for more than 24 hours. Topalli also explained that at his last rally (and possibly others) he fought with the police and confronted them, and so the police may have arrested him because he was fighting them.

Topalli said that each time he was arrested, the police beat him. He did not claim that the beatings ever resulted in injuries requiring medical attention. He also gave few details about these encounters with the police except for the first and last times he was arrested. The first time he was arrested was in 1999, when he participated in his first rally. That detention lasted 12 hours, and two or three policemen beat Topalli on the chest and the back with rubber sticks, swearing at him. The last time he was arrested was in March 2001, when he participated in his last rally. This time the police told Topalli that if he "continued to participate, they would imprison [him]." After he was released, Topalli lived for four months with his aunt in a village about two hours' drive away from Korce. He then returned to live with his parents in Korce for several years and ceased to

participate in ADP events, and he did not have any more problems with the police.

Topalli's older sister Alkada was raped in October 2002 by several men. Topalli's father went to the police station to file a report, but nothing was done by the police because Alkada could not identify her attackers. There was no indication this was connected with Topalli's political activities.

Topalli's family won a visa lottery in 2003 for entry into the United States. His whole family in Albania, save he and his older sister Alkada and her daughter, emigrated to the United States. Topalli and Alkada stayed behind because they were over 21 and not eligible for the visas.

On February 4, 2004, Topalli saw four men trying to kidnap his sister and push her into a car as she returned from work. He fought with the men and managed to help Alkada escape, but was rendered unconscious in the struggle. The men took him to an unknown place, and when he woke up, they threatened him with a gun and told him not to go to the police or file charges or they would kill Topalli and his sister. They also explained that they had intended to kidnap Alkada and ship her to Italy for prostitution. Topalli did not recognize the men, and there was no indication that this incident was connected with Topalli's activities in the ADP. He did not report the event to the police.

After this incident, Topalli decided to leave Albania with his sister and join the rest of his family in the United States. He and his sister obtained two false Italian passports for $10,000. Using the fake passports, Topalli, Alkada, and Alkada's daughter left Albania on March 11, 2004, and attempted to enter the United States at San Juan, Puerto Rico, on March 22, 2004. Immigration officials refused him admission upon discovering that the passports were false and detained him, and Topalli claimed fear of persecution if returned to Albania. He was then referred to an IJ for asylum-only proceedings.[2]

After a merits hearing on June 17, 2004, the IJ found Topalli to be not credible and denied his application for asylum, withholding of removal, and protection under the CAT.

Topalli appealed the IJ's denial to the BIA. On October 8, 2004, the BIA dismissed Topalli's appeal. The BIA disagreed with the IJ's adverse credibility finding, finding the inconsistencies and omissions relied upon by the IJ to be inconsequential. It nonetheless affirmed the IJ's denial of relief because it found that the maltreatment suffered by Topalli did not amount to past persecution, and that Topalli failed to show past persecution or reasonable likelihood of future persecution:

---

[2] The record does not reveal what happened to Alkada and her daughter.

> While [Topalli] was arrested and physically mistreated a number of times due to his participation in illegal demonstrations, his detentions were short, never lasting more than 24 hours, and he apparently did not receive injuries requiring medical attention. He admitted that, when he stopped participating in these demonstrations, the arrests ceased.

The BIA also concluded that Topalli's "primary reason for fleeing Albania was to protect his sister from further criminal attacks and attempts to force her into prostitution," which the BIA implicitly concluded not to be past persecution on account of one of the protected statutory grounds under 8 U.S.C. § 1101(a)(42)(A).

Topalli timely petitioned this court for review of the BIA's order dismissing his appeal.[3] Topalli's primary argument is that the BIA erred in determining that the treatment afforded to him did not constitute past persecution. Because we find that substantial evidence supports the BIA's finding that Topalli's treatment was not past persecution on account of one of the

---

[3] Topalli's challenge is to the BIA's dismissal of his appeal as a whole, but he offers no arguments with respect to his claims for withholding of removal or protection under the CAT. He has therefore waived any challenge to the BIA's denial of these claims. See Qin v. Ashcroft, 360 F.3d 302, 305 n.5 (1st Cir. 2004).

protected grounds, other arguments for relief by Topalli also fail.[4]

## II.

An asylum applicant bears the burden of proving that he or she is "unable or unwilling to return to [the applicant's country of nationality] . . . because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1101(a)(42)(A); see 8 C.F.R. § 1208.13(a). Applicants may meet this burden in one of two ways: 1) by demonstrating a well-founded fear of persecution on account of one of the statutory grounds, or 2) by establishing past persecution on account of one of the statutory grounds so as to be entitled to a presumption of a well-founded fear of persecution.  Mihaylov v. Ashcroft, 379 F.3d 15, 21 (1st Cir. 2004); 8 C.F.R. § 1208.13(b). Topalli argues that he has met the burden for showing past persecution.

We review the BIA's determination that Topalli failed to show past persecution under the deferential substantial evidence standard.  Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000).  Under

_____

[4]  Topalli also argues that 1) the severity of his past persecution qualifies him for a discretionary grant of asylum under 8 C.F.R. 208.13(b)(1)(iii); and 2) because he suffered past persecution, we should remand the case to the BIA and the IJ to determine whether his fear of future persecution is well-founded.  Both of these arguments require a threshold finding that the BIA erred in finding that Topalli did not suffer past persecution.

that deferential standard, we must uphold the BIA's resolution "so long as its decision is supported by substantial evidence in the record." Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 123 (1st Cir. 2005). The BIA's determination must stand "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see Rodriguez-Ramirez, 398 F.3d at 123.

The Arrests and Beatings

Topalli first argues that a finding of past persecution is compelled by the seven times when he was arrested, detained, and beaten.

Because there is no statutory definition of "persecution" under 8 U.S.C. § 1101(a)(42)(A), "it is in the first instance the prerogative of the Attorney General, acting through the BIA, to give content to it." Bocova v. Gonzales, __ F.3d __, 2005 WL 1491490, at *3 (1st Cir. June 24, 2005). Due to the infinite variety of factual circumstances the BIA is likely to face, the BIA has preferred to decide what amounts to past persecution on a case-by-case basis, instead of announcing rigid rules embodying some precise calculus of maltreatment and suffering. See id.

The question of whether Topalli suffered past persecution on account of his political beliefs here is a close one. But we are bound by our standard of review, and without minimizing Topalli's beatings at the hands of the police, the record does not

compel a reasonable fact finder to say that he suffered past persecution.

The record reveals that the detentions never exceeded 24 hours (and sometimes lasted for much less time). The police only once threatened Topalli with imprisonment if he continued with his (sometimes illegal) political activities, and Topalli himself was confident that the police did not have the power to incarcerate him for more than 24 hours without formal charges. Topalli did not give a great deal of detail concerning the duration or severity of the beatings,[5] but it is relevant that Topalli did not claim to need medical attention from the beatings. Topalli conceded that at least some of the arrests might have been due to his fighting with the police at the illegal rallies, rather than the result of police singling him out in a pattern of targeted political harassment. Besides the three times when he was arrested walking down the street, there were no other incidents of police surveillance, targeted harassment, or threats against him. Moreover, Topalli was able to live in relative peace in Albania, free from police harassment, for almost three years after his last arrest. We cannot say that we are compelled to conclude that Topalli was subjected to systematic maltreatment rising to the level of

---

[5] It is Topalli's burden to provide us with specifics of the circumstances of his maltreatment, which only he has knowledge of, in order to compel us to find for him. See Dandan v. Ashcroft, 339 F.3d 567, 574 (7th Cir. 2003).

persecution, as opposed to a series of isolated incidents.  See Bocova, 2005 WL 1491490, at *4.

In addition, circuit courts, including this one, have affirmed on comparable facts the BIA's determination that a petitioner's maltreatment did not rise to the level of persecution necessary for asylum eligibility.  See, e.g., Bocova, 2005 WL 1491490, at *1, *4 (finding no persecution where petitioner was arrested, beaten, and threatened with death twice over an eight-year span, and one beating caused petitioner to lose consciousness and to be taken to hospital); Dandan v. Ashcroft, 339 F.3d 567, 573-74 (7th Cir. 2003) (finding no persecution where petitioner was detained for three days, denied food, and beaten until face was swollen); Nelson, 232 F.3d at 264 (finding no persecution where petitioner was placed in solitary confinement three times, each time lasting less than 72 hours and involving physical abuse, and petitioner was periodically surveyed, threatened, and stopped and searched).

Topalli suggests that the BIA impermissibly made the presence or absence of injury requiring medical attention into a sort of "acid test" for persecution, contrary to Beqzatowski v. INS, 278 F.3d 665, 670 (7th Cir. 2002) (BIA cannot require applicants for asylum to prove serious or permanent injury as the sine qua non of persecution).  That is not a fair reading of what the BIA did.  The BIA took into account, as do we, the absence of

the need for medical attention after the beatings as but one factor in the analysis. The BIA is certainly allowed to take into account the severity, duration, and frequency of physical abuse to determine whether the abuse extends beyond "unpleasantness, harassment, and even basic suffering" to rise to the level of persecution. Nelson, 232 F.3d at 263-64; see also Dandan, 339 F.3d at 573 (frequency of beatings, while not dispositive, is a significant factor in determining past persecution).

The Attempted Kidnaping

Topalli also argues that the criminal attempt to kidnap his sister for prostitution and the subsequent beating he suffered constitute persecution because the government is unwilling or unable to control the criminals. This argument is misplaced.

Even if we assume that Topalli is correct that the police are so corrupt that they "collude with traffickers in attempts to export girls abroad for monetary gain," Topalli has not alleged any theory for how such criminal activities are directed at him "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A) (emphasis added). There is no evidence that the attempt to kidnap Alkada was because of either Alkada's or Topalli's political activities. The record indicates that the assault on Topalli and his sister was a random act of criminal violence, not persecution on account of one of the statutory grounds. See Ravindran v. INS,

-11-

976 F.2d 754, 759 (1st Cir. 1992) ("Generally, evidence of widespread violence and human rights violations affecting all citizens is insufficient to establish persecution."). We also agree that the evidence does not support Topalli's claim that he would be persecuted in the future.

### III.

The petition for review is **<u>denied</u>**.