# United States Court of Appeals

## For the First Circuit

No. 08-1112

BAHRI KARAM KHAN,

Petitioner,

v.

MICHAEL B. MUKASEY, United States Attorney General,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Boudin and Howard,
Circuit Judges.

William P. Joyce and Joyce & Associates P.C. for petitioner.
Gregory G. Katsas, Assistant Attorney General, Anthony W. Norwood, Senior Litigation Counsel, and Shahrzad Baghai, Trial Attorney, Office of Immigration Litigation, on brief for respondent.

December 5, 2008

**HOWARD**, <u>Circuit Judge</u>.  The petitioner, Bahri Karam Khan, a Pakistani national, seeks review of a Board of Immigration Appeals' ("BIA") final order upholding an Immigration Judge's ("IJ") denial of his applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").  Discerning substantial evidence in the record to support the BIA's determination, we deny the petition for review.

## I. Background

Khan entered the United States on July 1, 2001 as a non-immigrant visitor.  In late 2004, the Department of Homeland Security ("DHS") issued a Notice to Appear against Khan, charging him with removability for overstaying his visa, in violation of 8 U.S.C. § 1227(c).  Khan admitted the factual allegations but denied removability and declined to designate a country of removal.  He also requested asylum, withholding of removal, and protection under the CAT.  In March 2005, more than four years after his entry into the United States, Khan filed an I-589 Application for Asylum and for Withholding of Removal.  In support of his application, Khan claimed that he suffered persecution in Pakistan on account of his political opinion.  We summarize Khan's testimony at his subsequent hearing before the Immigration Judge.

In January 1998, Khan joined the People's Party of Pakistan ("PPP").  As a member of this political party, he "arranged meetings" and attended "processions."  On March 17, 1998,

Khan attended a PPP demonstration near the city of Mingora, Pakistan. The police arrested seven people at the demonstration, including Khan, and warned them to "stop working for [the] People's Party, not to talk against the government, and [to] join the government party." Khan was charged with speaking against the government. While in prison, Khan was beaten with wooden sticks and shocked with electrical wires. He remained in prison for ten days until his father posted bail. Khan did not seek medical treatment for any injuries he sustained in prison.

Following his release, Khan immediately left the Mingora area for other parts of Pakistan. He spent thirteen months living in Karachi and three months in Lahore. Khan next moved to the town of Swat, where his family resides. Fearing that the police would find him if he stayed in his family's home, Khan lived apart and visited his family only at night.

After three months, he moved to Peshawar, where he joined the crew of an oil tanker. In April 2000, Khan left Pakistan on a ship which docked in Malaysia, Indonesia, and the Philippines. At each of these ports, Khan disembarked the ship. In December 2000, Khan returned to Pakistan. In July 2001, he obtained a C-1 visa and traveled, again as a member of the ship's crew, to the United States. When questioned by his counsel as to why he did not return to Pakistan with his fellow crew members, Khan responded that the ship departed without his knowledge, and he could not afford to

purchase a return ticket. On cross-examination, Khan acknowledged that he intended to return to Pakistan when he first arrived in the United States. His parents, wife and three children continue to reside in Swat, Pakistan.

As previously noted, in March 2005, four years after arriving in the United States, Khan applied for asylum, withholding of removal and withholding under CAT.

The IJ denied Khan's applications and granted his request for voluntary departure. The IJ ruled that the asylum application was time-barred and Khan did not qualify for an exception.[1] The IJ rejected the CAT claim for failure to establish harm amounting to torture under the Convention.[2] Khan does not pursue these claims in his petition.

In support of the conclusion that Khan was ineligible for withholding of removal, the IJ found that Khan failed to demonstrate either past persecution or a likelihood of future

---

[1]An application for asylum must be filed within one year of the alien's arrival in the United States, absent changed circumstances affecting eligibility for asylum or extraordinary circumstances relating to the delay in filing. 8 U.S.C. §§ 1158(a)(2)(B); 1158(a)(2)(D).

[2]To qualify for withholding of removal under the CAT, an applicant must establish that it is "more likely than not that [he] . . . would be tortured if removed" to Pakistan. Limani v. Mukasey, 538 F.3d 25, 32 (1st Cir. 2008)(quoting 8 C.F.R. § 208.16(c)(2)). "'Torture' means 'severe pain or suffering, whether physical or mental . . . inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.'" Id. (quoting 8 C.F.R. 208.18(a)(1))(alteration in original).

-4-

persecution. Taking Khan's factual testimony to be true, yet doubting some specific details, the IJ determined that the mistreatment Khan received in prison was not so severe as to constitute persecution. The IJ found that Khan did not require even "rudimentary medical intervention," and Khan failed to establish that he was arrested for his political activities. Specifically, the IJ noted that Khan was only a member of the party for three months prior to his arrest, and he was not a principal speaker at the PPP meeting. The IJ further concluded that Khan's acknowledged intent to return to Pakistan, the infrequency of his political activities, and Pakistani authorities' seeming lack of interest in arresting him again, undercut his claim of future persecution.

The BIA affirmed, expressly agreeing with most of the IJ's findings. The BIA concluded that the IJ did not err in finding that Khan failed to prove past persecution, stating that his alleged arrest and mistreatment by the police did not rise to the level of persecution. The BIA also agreed with the IJ's determination that the evidence did not support a finding of future persecution, considering that Khan remained unharmed in Pakistan for three years following his arrest, and that his family continued to live safely in Pakistan. The BIA also stated that Khan's return to Pakistan, after traveling to several countries of safe haven,

undermined his claim. The BIA permitted Khan to depart voluntarily. This petition followed.

## II. Discussion

We review the BIA's decision under the deferential "substantial evidence" standard, reversing only if a "reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); see also Pan v. Gonzales, 445 F.3d 60, 61 (1st Cir. 2006). Under this standard, the BIA's decision will be upheld if supported by "reasonable, substantial, and probative evidence on the record considered as a whole." Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 256 (1st Cir. 2004) (internal quotation omitted).

To qualify for withholding of removal, an applicant has the burden to prove that his "life or freedom would be threatened in the destination country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b); see also 8 U.S.C. § 1231(b)(3)(A). To satisfy this burden, the applicant must either prove past persecution, which gives rise to a rebuttable presumption of future persecution, or show that it is "more likely than not" that he will face future persecution based on one of the statutory grounds. Limani, 538 F.3d at 31 (citing 8 C.F.R. § 208.16(b)(1)(i),(b)(2)). In other words, the alien must prove a "clear probability" of persecution in the country to which removal is proposed. INS v.

-6-

<u>Stevic</u>, 467 U.S. 407, 430 (1984); <u>Ang</u> v. <u>Gonzales</u>, 430 F.3d 50, 58 (1st Cir. 2005); <u>see also</u> <u>Limani</u>, 538 F.3d at 31.

Although the alleged mistreatment Khan experienced is objectionable, our deferential standard of review does not permit us to second-guess the determinations of the BIA, if they are supported by substantial evidence in the record. <u>See</u> <u>Bocova</u> v. <u>Gonzales</u>, 412 F.3d 257, 263 (1st Cir. 2005). The substantial evidence standard demands that we uphold the agency's determination unless the evidence "points unerringly in the opposite direction." <u>Laurent</u> v. <u>Ashcroft</u>, 359 F.3d 59, 64 (1st Cir. 2004) (<u>citing</u> <u>INS</u> v. <u>Elias-Zacarias</u>, 502 U.S. 478, 481 & n.1 (1992)). Here, the evidence does not compel us to reject the BIA's conclusion. <u>See</u> <u>Elias-Zacarias</u>, 502 U.S. at 481 n.1.

Substantial evidence in the record supports the finding that Khan has proved neither past persecution nor a likelihood of future persecution. An important factor in determining whether alleged incidents rise to the level of persecution is whether "the mistreatment can be said to be systematic rather than reflective of a series of isolated incidents." <u>Bocova</u>, 412 F.3d at 263. Moreover, "[t]o qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." <u>Nelson</u> v. <u>INS</u>, 232 F.3d 258, 263 (1st Cir. 2000).

The record supports a conclusion that Khan's mistreatment was an isolated event; the only incident to which Khan

testified occurred in March 1998. That fact alone is sufficient to support the finding that Khan was not persecuted. See, e.g., Journal v. Keisler, 507 F.3d 9, 12 (1st Cir. 2007) (alien did not suffer persecution where he "alleged only one incident of violence in which he was struck on the head and arms"); Attia v. Gonzales, 477 F.3d 21, 23-24 (1st Cir. 2007)("two altercations in a nine-year period and a general climate of discrimination" do not suffice as past persecution); Nelson, 232 F.3d at 264 (three brief incarcerations in solitary confinement, physical abuse during each incarceration, along with surveillance and harassment did not constitute persecution).

The BIA's rejection of Khan's past persecution claim draws further support from the fact that Khan provided little information regarding the duration or severity of the beatings he received. It was Khan's "burden to provide us with specifics of the circumstances of his maltreatment, which only he has knowledge of, in order to compel us to find for him." Topalli v. Gonzales, 417 F.3d 128, 132 n.5 (1st Cir. 2005). Moreover, as the BIA noted, Khan's injuries were not so serious that he sought medical attention.

On these facts, we are not compelled to conclude that Khan was subjected to systematic abuse rising to the level of persecution. This result is consistent with other cases presenting comparable facts. See, e.g., id. at 132 (seven arrests over a two-

year period, accompanied by brief detentions and beatings which did not require medical treatment, did not rise to the level of persecution); Bocova, 412 F.3d at 263 (finding no persecution where petitioner was arrested, threatened with death twice over an eight-year period, and was so severely beaten that he lost consciousness and was hospitalized); Ravindran v. INS, 976 F.2d 754, 756-60 (1st Cir. 1992) (persecution not found where ethnic minority member had been interrogated and beaten for three days in prison after participating in a political protest); cf. Desir v. Ilchert 840 F.2d 723, 729 (9th Cir. 1988) ("successive and specific threats" to petitioner's life and "beatings, arrests and assaults" in the context of ongoing extortion by Haitian police was sufficient to establish past persecution). A dictionary reading layperson might think a police beating for expressing political views to be persecution, but in the ordinary case precedent calls for something like a pattern or prolonged period of events and not a single specific event, objectionable though it may be.

Having failed to establish past persecution, Khan is not entitled to a presumption of further persecution. See 8 C.F.R. § 208.16(b)(1)(i). As to future persecution, substantial evidence supports the conclusion that Khan has failed to prove it was "more likely than not" he would be persecuted on account of his political beliefs if he should return to Pakistan. See Limani, 538 F.3d at 31; 8 C.F.R. § 208.16(b)(2).

As noted by the BIA, the continued safety of Khan's parents, wife and children, who still live in Pakistan, undercuts Khan's argument that he would suffer persecution if he returned. See, e.g., Ferdinandus v. Gonzales, 504 F.3d 61, 63 (1st Cir. 2007); Melhem v. Gonzales, 500 F.3d 78, 82 (1st Cir. 2007); Ouk v. Gonzales, 464 F.3d 108, 111 (1st Cir. 2006). Khan himself remained in Pakistan for the better part of three years without incident. Additionally, Khan left Pakistan in April 2000 and returned in December 2000, despite having visited several countries in which he could have found refuge. See Diab v. Ashcroft, 397 F.3d 35, 42 (1st Cir. 2005) (petitioner's trips to countries of safe haven after the alleged incidents of his persecution "significantly undercut his claim that he is now afraid to return."). Finally, although the BIA did not expressly rely on this fact, Khan admitted that he intended to re-board the ship to Pakistan when he first arrived in the United States, but did not return to Pakistan only because the ship left without him.

This evidence substantially supports the BIA's decision. The petition is therefore denied.

**So Ordered.**