# United States Court of Appeals
## For the First Circuit

No. 11-2174

OSWALDO CABAS,

Petitioner,

v.

ERIC H. HOLDER, JR.,
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Ripple[*] and Selya,
Circuit Judges.

Kevin MacMurray and MacMurray & Associates on brief for petitioner.
Tony West, Assistant Attorney General, Civil Division, Blair T. O'Connor, Assistant Director and R. Alexander Goring, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, on brief for appellant.

September 25, 2012

[*]Of the Seventh Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.   Petitioner Oswaldo Cabas, a native and citizen of Venezuela, seeks review of a final order of the Board of Immigration Appeals ("BIA").  The order upheld both an immigration judge's ("IJ") determination that Cabas's asylum application was time-barred and the IJ's denial of his application for withholding of removal on the merits.  We lack jurisdiction over the asylum claim and, discerning no error in the BIA's ruling on the withholding of removal claim, we deny the remainder of the petition.

## I.

Cabas first entered the United States in April 2002.  The record does not disclose whether he entered lawfully.  Roughly six months later, he returned to Venezuela and stayed there for a month.  In November of the same year, Cabas reentered the United States as a non-immigrant visitor permitted to remain in the country for one month.  He has remained here ever since.  Federal authorities initiated removal proceedings against him in December 2007 for overstaying his visa.  Cabas conceded removability but applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").

Cabas, the only witness at the removal hearing, testified to the following facts.  He was born in Maracaibo, Venezuela, and lived there until he came to the United States in 2002.  After graduating from high school in 1992, he became a political

-2-

activist. As a member of an opposition group known as "Acción Democrática," he organized meetings, distributed fliers, and spoke to people about vices of the government. He also had a small segment on a political opinion show that aired on a local radio station. After Hugo Chavez came to power in 1998, Cabas joined a rival political party and began speaking out against the Chavez administration. His troubles began shortly thereafter.

In December 1999, Cabas was at a party with some friends when he heard gunshots and his name being called. He fled the scene and hid in a nearby house until it was safe for him to go home. The next incident occurred in March 2000, when he was kidnapped at gunpoint in the daytime while buying auto parts. Based on their apparel and the fact that they called themselves "the defenders of the government," Cabas believed his kidnappers were members of the Bolivarian Circle, a group associated with Chavez. The kidnappers beat Cabas and demanded that he cease his political activities. At one point he was struck on the head with a gun and lost consciousness. He awoke in a remote location, covered in blood. Cabas went to the nearest police station to report the attack, but he did not seek medical attention for his injuries. The police did not investigate the incident.

Cabas resumed his political activities several months after the attack. After his father was kidnapped and beaten in a similar fashion, Cabas decided to come to the United States. He

-3-

arrived here in April 2002. Six months later, he returned to Venezuela because he thought that the situation there had calmed. Shortly after his arrival, two men came to his parents' house looking for him. They beat his brothers to coerce them to reveal Cabas's whereabouts. His mother and sister, who witnessed the incident, received threats as well. Around the same time, several men forcibly broke into his parents' house and issued threats.[1]

With his family's encouragement, Cabas returned to the United States in November 2002. After his departure, his family received threats that he would be harmed or killed if he returned to the country. His family remained living in Venezuela unharmed.

Cabas testified that he did not seek asylum until 2009 because he was "ill-advised" and had planned to return home after Chavez left office. In February 2009, Cabas became convinced that Chavez would remain in power indefinitely because the country eliminated presidential term limits.

At the close of the hearing, the IJ issued an oral decision finding Cabas removable as charged. The IJ ruled that Cabas's asylum application was untimely because he had filed it more than six years after his November 2002 arrival, and he did not prove changed country conditions to qualify for an exception to the one-year filing deadline. The IJ also denied Cabas's application

_____

[1] It is unclear from Cabas's testimony whether the break-in occurred at the time his brothers were beaten or on a separate occasion.

-4-

for withholding of removal, in which Cabas claimed a likelihood of persecution on the basis of the statutorily protected ground of political opinion. The IJ concluded that Cabas failed to demonstrate either past persecution or a likelihood of future persecution. The IJ found Cabas's testimony to be generally credible, but discounted his testimony that men forcibly broke into his parents' house because Cabas never mentioned the incident in his affidavit filed in support of his application. The IJ then determined that the kidnapping and beating that Cabas suffered and the threats to his safety were not so severe as to constitute persecution, reasoning that Cabas was physically harmed on only a single occasion and did not seek medical attention following the incident. Further, the IJ concluded that Cabas's return to Venezuela after the attack and the fact that his family continued to live there unharmed undermined his claim of future persecution. Lastly, the IJ denied Cabas's CAT claim.

Cabas appealed the IJ's decision, save for its ruling on the CAT claim, and the BIA affirmed. The BIA agreed with the IJ that Cabas failed to prove changed country conditions or exceptional circumstances to excuse the late filing of his asylum application. With respect to withholding of removal, the BIA echoed the IJ's reasoning that Cabas was physically harmed only on one occasion; he did not seek medical attention for his injuries; and he returned to Venezuela following the incident. Accordingly,

the BIA concluded that he did not establish past persecution, and it agreed with the IJ's determination that the evidence did not otherwise support a finding of a likelihood of future persecution. This petition followed.

**II**.

Cabas challenges both the BIA's decision that his asylum application was time-barred and its denial on the merits of his request for withholding of removal. We address the challenges in turn.

A.  Timeliness of the Asylum Application

To qualify for asylum, an applicant ordinarily must make his request within one year of his arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). Late applications may be accepted, however, if the applicant shows "changed circumstances which materially affect [his] eligibility for asylum or extraordinary circumstances relating to the delay in filing an application." Id. § 1158(a)(2)(D). The applicant bears the burden of establishing that the application was timely or that an exception to the filing deadline applies. Oroh v. Holder, 561 F.3d 62, 66 (1st Cir. 2009).

Cabas concedes that he filed his asylum application more than six years after his last arrival in the United States. In his petition for review, he argues that the BIA and the IJ "abused their discretion" in finding that he did not establish changed circumstances that could support an exception to the filing

-6-

deadline. This challenge is a quintessentially fact-based attack, and it is thus doomed to fail. We are without jurisdiction to review agency findings regarding timeliness of an asylum application or applicability of exceptions to the one-year rule, unless the petitioner challenges the decision on constitutional or legal grounds. Rashad v. Mukasey, 554 F.3d 1, 5 (1st Cir. 2009). Cabas is plainly challenging the BIA's factfinding about changed circumstances vel non. We lack jurisdiction to review that decision.

B. Withholding of Removal

Because the BIA adopted in part the IJ's decision denying Cabas's request for withholding of removal but also provided additional analysis, we review both decisions. Uruci v. Holder, 558 F.3d 14, 18 (1st Cir. 2009). We review the decisions under the deferential "substantial evidence" standard, reversing only if a "reasonable adjudicator would be compelled to conclude to the contrary." Khan v. Mukasey, 549 F.3d 573, 576 (1st Cir. 2008) (internal quotation marks omitted). Under this standard, we uphold the agency action so long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation marks omitted).

To qualify for withholding of removal, an alien must show that, if repatriated, he faces "a clear probability of future

-7-

persecution" on account of one of five protected grounds, namely, race, religion, nationality, membership in a particular social group, or political opinion. Palma-Mazariegos v. Gonzales, 428 F.3d 30, 37 (1st Cir. 2005); see 8 U.S.C. § 1101(a)(42). To satisfy this burden, the alien must show that it is "more likely that not" that he will face future persecution, a burden that may be met by proof that he suffered persecution in the past, which gives rise to a rebuttable presumption of future persecution. Khan, 549 F.3d at 576.

Before considering whether Cabas has satisfied this burden, we address his challenge to the IJ's credibility determination. He argues that the IJ's decision is internally inconsistent because the IJ found his testimony to be generally credible and yet discredited his testimony that at one point men broke into his parents' house. The argument lacks merit. Even though the IJ found Cabas to be generally credible, this did not require the IJ to accept every specific aspect of Cabas's testimony. See Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 258-59 (1st Cir. 2004) (IJ's finding that applicant was "generally" credible does not mandate a conclusion that he was "credible in all respects"). The IJ discounted the event because Cabas failed to mention it in his affidavit. The record does not compel a contrary conclusion. Moreover, even if the IJ read too much into the omission, the IJ's decision to discount the event was not pivotal.

-8-

The record makes clear that even if the discredited incident is taken into account, the outcome remains the same.

Substantial evidence in the record supports the determinations by the BIA and the IJ that Cabas proved neither past persecution nor a likelihood of future persecution on account of his political opinion. In determining whether alleged incidents rise to the level of persecution, one important factor is whether "the mistreatment can be said to be systematic rather than reflective of a series of isolated incidents." Bocova v. Gonzales, 412 F.3d 257, 263 (1st Cir. 2005). Moreover, "[t]o qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000).

The record supports a conclusion that the mistreatment Cabas suffered was not sufficiently severe to constitute persecution. We accept for purposes of analysis that on one occasion he was kidnapped, beaten, and left unconscious in a remote location; and on other occasions Cabas and his family received threats to his safety, including threats following a break-in at his parents' home. As objectionable as the mistreatment was, it does not compel a conclusion that Cabas suffered systematic abuse. The single incident of physical harm was an isolated event and the resulting injuries were not sufficiently severe to require medical attention. See Topalli v. Gonzales, 417 F.3d 128, 133 (1st Cir.

-9-

2005) ("The BIA took into account, as do we, the absence of the need for medical attention after the beatings as but one factor in the analysis."). In addition, nothing suggests that the threats to Cabas's safety were anything but sporadic. We have numerous times affirmed BIA determinations that maltreatment did not rise to the level of persecution in cases presenting comparable, if not more egregious, facts. See, e.g., Khan, 549 F.3d at 575 (finding of persecution not compelled where petitioner was beaten with wooden sticks and shocked with electrical wires while in prison for ten days); Topalli, 417 F.3d at 132 (finding of persecution not compelled where petitioner was arrested, beaten, and detained on seven occasions in a two-year period); Bocova, 412 F.3d at 263 (finding of persecution not compelled where petitioner was arrested, threatened with death twice over an eight-year period, and was so severely beaten that he lost consciousness and was hospitalized); Guzman v. INS, 327 F.3d 11, 15-16 (1st Cir. 2003) (finding of persecution not compelled where petitioner was kidnapped, beaten, and held captive for three hours).

Nor has Cabas otherwise shown a clear probability of future persecution. As noted by the BIA and the IJ, the fact that Cabas's family continued to live in Venezuela unharmed undercuts his claim that persecution awaits him upon return. See Khan, 549 F.3d at 577 (continued safety of petitioner's family undermined claim of future persecution). Cabas's claim is further undermined

by the fact that he returned to Venezuela for a month in 2002, after the prior beating and threats to his safety.  See Pakasi v. Holder, 577 F.3d 44, 47-48 (1st Cir. 2009) (voluntary return to the native country following mistreatment undermined petitioner's claim of future persecution).  Accordingly, substantial evidence supports the BIA's determination that Cabas failed to establish his entitlement to withholding of removal.

The petition for review is **dismissed** as to the asylum claim and **denied** as to the claim for withholding of removal.