# United States Court of Appeals
## For the First Circuit

No. 13-2059

CLAUDIA NINETH BEDOYA LOPEZ DE ZEA,

Petitioner,

v.

ERIC H. HOLDER, JR., Attorney General,

Respondent.

PETITION FOR REVIEW FROM AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Chief Judge,
Howard and Lipez, Circuit Judges.

Randy Olen on brief for petitioner.
Jesse M. Bless, Trial Attorney, Office of Immigration
Litigation, Civil Division, Stuart Delery, Assistant Attorney
General, Civil Division, and Anthony C. Payne, Senior Litigation
Counsel, on brief for respondent.

July 30, 2014

**LYNCH, <u>Chief Judge</u>**.  Claudia Nineth Bedoya Lopez de Zea ("Bedoya") petitions for review of the Board of Immigration Appeals' ("BIA") decision, challenging only the determination that she was not eligible for withholding of removal.  We deny the petition because substantial evidence supports the BIA's findings that Bedoya had established neither past persecution nor a clear probability of future persecution.

I.

Bedoya, a native and citizen of Guatemala, came to the United States on a tourist visa on March 26, 2002, and has overstayed.  It is now almost ten years after her 2004 Notice to Appear.  With the benefit of generous continuances, she did not concede removability until September 2006, and she later sought relief, including withholding of removal.

Her merits hearing before an Immigration Judge ("IJ") was not until April 2, 2010.  Bedoya testified that she "had a problem with [a] group of people" in Guatemala known as "guerillas." Specifically, the guerillas started to threaten her father after he was elected as the mayor of a small community in 1974, during the Guatemalan civil war.  They  also once "broke the window of [her] father's car"; he did not pay much attention to the threats.

In 1991, Bedoya joined a club that was dedicated to improving the local community; her father was also a member, and the organization engaged in fundraising activities for local

-2-

schools and donated Christmas gifts to neighborhood children. The same year that Bedoya joined this club, she testified that the guerillas shot at the gates of her home. Nobody was harmed. Bedoya was associated with this club for six years, until 1997.

Bedoya said that the guerillas also called her house and told her family that something might happen to them because they were not supposed to help improve the community. The guerillas other times knocked on the door of her family's home and then fled. Bedoya testified that these threats happened about once a month. She reported them to the police, who never made an arrest.

Bedoya testified that in September 2001, another car hit hers while she was on her way to work. She did not recognize the male driver from the car accident. The accident occurred four years after she had stopped her work with the community-improvement club, but the man told Bedoya that he was not pleased that she had partaken in activities to improve the town. He broke the windows of her car, threatened her, and hit her upper arm, bruising it.

Bedoya had written down the man's license plate and reported the incident to the police. The police later told her that they had not identified the man and had lost the incident report.

Bedoya also testified that she had visited the United States about six or seven times between 1980 and 1999 and always returned to Guatemala because she had not "pa[id] much attention"

to the guerillas' threats. Bedoya visited the United States on December 17, 2001, three months after the car accident. She returned to Guatemala about a month later because she thought a month was sufficient time for things to calm down. Bedoya was not physically attacked when she returned to Guatemala.

She continued to receive threatening phone calls before her final trip to the United States in March 2002, when she finally decided not to return to Guatemala. She was afraid that if she returned to Guatemala, the guerillas would make extortionate threats against her children who are American citizens because of Guatemalans' perception that Americans are wealthy.[1]

Bedoya's father still lives in Guatemala. He is no longer the mayor of his community, but still supports his political party. Bedoya explained that since she left Guatemala the guerillas have continued to threaten her father over the phone every "once in a while," but that no other incidents have occurred. Bedoya was the only witness at her merits hearing.

After the hearing, the IJ denied Bedoya's application for asylum, withholding of removal, and protection under the Convention Against Torture in an oral decision. As to Bedoya's withholding of

---

[1] When Bedoya came to the United States in March 2002, she had two children. Her first child was born in Guatemala. Her second child, however, is a United States citizen and was born in May 2001 during one of Bedoya's visits to the United States. Bedoya later gave birth to a third child in the United States in July 2003.

removal claim, the IJ found that she had not established a clear probability that she would face future persecution if she were to return to Guatemala.[2] The IJ, however, did not make a specific finding as to whether Bedoya had established past persecution.

Bedoya appealed to the BIA. On December 23, 2011, the BIA remanded the case to the IJ so that he could determine in the first instance whether or not Bedoya had been subjected to past persecution. Such a finding would create a presumption of future persecution, which the Department of Homeland Security would have to rebut. See Orelien v. Gonzales, 467 F.3d 67, 71 (1st Cir. 2006) (explaining that a showing of past persecution based on a protected ground entitles a petitioner to a rebuttable presumption of future persecution).

On remand, the IJ determined that Bedoya was not entitled to a presumption of future persecution because there was no nexus between a protected ground and the harm that she suffered in Guatemala. As to the 2001 car accident, the IJ specifically found that the man who hit Bedoya's car had acted outrageously, but that his remarks about Bedoya's efforts to improve the community did not establish that his conduct was on account of a protected ground. The IJ also held that even if Bedoya had suffered past persecution, the Guatemalan civil war had "long since been over and [Bedoya] is

---

    [2] Only Bedoya's withholding of removal claim is at issue here. She has not petitioned for review of the denial of her other claims.

not likely to suffer any future persecution on account of her family's real or perceived status as [a] pro-government[,] anti-guerilla faction."  In addition, Bedoya's travel to the United States and voluntary return to Guatemala shortly after the car accident undermined her claim of a well-founded fear of future persecution.  The IJ denied Bedoya's withholding of removal claim and ordered her removed to Guatemala.[3]  Bedoya appealed to the BIA a second time.

On July 30,2013, the BIA dismissed Bedoya's appeal.  The BIA explained that "the totality of a petitioner's experiences [must] add up to more than mere discomfiture, unpleasantness, harassment, or unfair treatment" to constitute past persecution. (quoting Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005)) (internal quotation marks omitted).  The BIA determined that "the gunshots at [Bedoya's] house, the threats [that Bedoya's] family received as a result of her father's position as mayor, and finally the 2001 car accident in which [Bedoya] was apparently struck on her arm and threatened, do not satisfy this standard."

The BIA also found that Bedoya had not established a clear probability of future persecution because she had not presented any evidence that she would be targeted based on her father's former position as mayor and her former membership in the

---

[3]  The IJ noted that Bedoya was a good candidate for voluntary departure but that she had withdrawn her request for voluntary departure at a previous hearing.

community improvement group.  In addition, the BIA held "there is no evidence that [Bedoya had] suffered harm on th[e] return [to Guatemala] prior to her most recent entry in the United States in March 2002."  Indeed, the BIA agreed with the IJ that Bedoya's frequent travel to the United States and voluntary return to Guatemala before March 2002 undermined her claim of a likelihood of future persecution.  As a result, Bedoya was not eligible for withholding of removal.  This petition for review followed.

II.

Where, as here, "the BIA affirmed the IJ's decision and added its own analysis," we can review both decisions.  Ang v. Holder, 723 F.3d 6, 10 (1st Cir. 2013).  We review the BIA's findings of fact under the substantial evidence standard, "reversing only if a 'reasonable adjudicator would be compelled to conclude to the contrary.'"  Id. (quoting Khan v. Mukasey, 549 F.3d 573, 576 (1st Cir. 2008)).

To be eligible for withholding of removal, Bedoya must prove it is more likely than not that she would be subjected to persecution on account of a statutorily protected ground should she be repatriated to Guatemala.  Mazariegos-Paiz v. Holder, 734 F.3d 57, 64 (1st Cir. 2013).  Proof of past persecution on account of a protected ground creates a rebuttable presumption of future persecution.  Id.

-7-

Bedoya first argues that the BIA's determination that she had not suffered past persecution was erroneous. Not so. As the BIA correctly stated, persecution requires more than "unpleasantness, harassment, and even basic suffering." Jorgji v. Mukasey, 514 F.3d 53, 57 (1st Cir. 2008) (quoting Nelson v. I.N.S., 232 F.3d 258, 263 (1st Cir. 2000)) (internal quotation mark omitted). It is relevant whether the harm is systematic or a series of isolated events, as is the severity, duration, and frequency of the harm. Barsoum v. Holder, 617 F.3d 73, 79 (1st Cir. 2010).

Here, ten years separated the gunshots fired at the gates of her home in 1991 and the 2001 car accident. Not only were the few incidents of mistreatment infrequent and sporadic, but the only physical harm that Bedoya suffered in Guatemala was a bruise on her arm. See Topalli v. Gonzales, 417 F.3d 128, 132-33 (1st Cir. 2005) (explaining that severity of physical harm, including whether or not medical attention was required, is relevant to persecution inquiry). Neither the severity nor the frequency or duration of the alleged mistreatment rises to the level of persecution.

Bedoya also asserts that credible verbal death threats can constitute persecution. See Un v. Gonzales, 415 F.3d 205, 210 (1st Cir. 2005). However, Bedoya ignores her own testimony that neither she nor her father paid much attention to the guerillas' threats, undermining any inference that those threats were

-8-

credible.  In short, the BIA reasonably concluded that the threats and mistreatment that Bedoya and her family suffered in Guatemala did not establish past persecution, and so Bedoya enjoyed no presumption of future persecution.  See, e.g., Abdelmalek v. Mukasey, 540 F.3d 19, 23 (1st Cir. 2008) (concluding that "[a] series of somewhat vague verbal threats, seemingly unaccompanied by any significant physical abuse and any government involvement or acquiescence, simply does not rise to the level of persecution").

As to the future persecution prong of her withholding claim, Bedoya says the BIA erred in "assigning conclusive weight" to the evidence that she had voluntarily returned to Guatemala after several visits to the United States, including a trip shortly after the 2001 car accident.  This argument simply misreads the BIA's opinion.  The BIA's conclusion rested primarily on the lack of record evidence that Bedoya would be targeted or harmed if she were to return to Guatemala, and Bedoya's voluntary return to Guatemala was only one factor relevant to that analysis.  See Cabas v. Holder, 695 F.3d 169, 174-75 (1st Cir. 2012) (a petitioner's voluntary return to his homeland undermines his claim of future persecution).

Bedoya does not dispute that the guerillas have not physically harmed her father since she came to the United States, although her father has continued to support his political party.  Nor does she contest the BIA's finding that she did not suffer

physical harm during her return to Guatemala after her December 2001 trip to the United States but before her final departure to this country in March 2002. She points only to the intermittent telephone threats that her father has received from guerillas, which are, without more, insufficient to show that she would suffer persecution were she to return to Guatemala. As a result, substantial evidence supports the BIA's conclusion that Bedoya has not established a likelihood of future persecution, and Bedoya is not eligible for withholding of removal.[4]

### III.

For the reasons stated, the petition for review is denied.

---

[4] We note that Bedoya has also challenged aspects of the IJ's decision denying her withholding of removal claim. Here, however, the BIA affirmed the IJ's decision after conducting its own analysis as to why Bedoya had not established either past persecution or a clear probability of future persecution. The BIA's findings, which are substantially supported by the record, provide an independent basis for the denial of Bedoya's withholding claim. So, we need not address her arguments directed at the IJ's decision. See Pulisir v. Mukasey, 524 F.3d 302, 307-08 (1st Cir. 2008) (focusing judicial review on BIA's decision where BIA's affirmance of the IJ's decision was on a "self-generated rationale").