# United States Court of Appeals
## For the First Circuit

No. 16-1774

MARIO GILBERTO MORALES-MORALES,

Petitioner,

v.

JEFFERSON B. SESSIONS, III,
Attorney General of the United States,[*]

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

George Charles Maroun, Jr. for petitioner.
Allison Frayer, Trial Attorney, Office of Immigration
Litigation, Civil Division, United States Department of Justice,
Benjamin C. Mizer, Principal Deputy Acting Assistant Attorney
General, M. Jocelyn Lopez Wright, Acting Assistant Director,
Office of Immigration Litigation, and Melissa Neiman-Kelting,
Senior Litigation Counsel, Office of Immigration Litigation, for
respondent.

---

[*] Pursuant to Fed. R. App. P. 4(c)(2), Attorney General
Jefferson B. Sessions, III has been substituted for former Attorney
General Loretta E. Lynch as the respondent.

May 22, 2017

**BARRON**, **Circuit Judge**.  Mario Gilberto Morales-Morales ("Morales") petitions for review of a decision of the Board of Immigration Appeals ("BIA") denying Morales's requests for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  We deny the petition.

## I.

Morales is a citizen of Guatemala.  He entered the United States unlawfully in 2012.  After immigration authorities began removal proceedings against him, Morales applied for asylum, withholding of removal, and protection under the CAT.

In the proceedings before the Immigration Judge ("IJ"), Morales offered the following account in testimony that the IJ determined to be credible.  Morales joined the Partido Party in 2011 and began distributing the party's fliers in Guatemala City approximately twice a week.  Roughly a year later, Morales, along with four other members of the Partido Party, was beaten by members of a different political party -- the Lider Party -- who retaliated against Morales for his refusal to join their ranks and help them with "publicity."  These members of Lider beat him "unconscious," such that Morales required hospitalization.  They also broke his arm.

After Morales returned home from the hospital, he received "threatening phone calls."  Morales's uncle, the IJ noted, was also a Partido member and had "disappeared in May of 2011."

- 3 -

The uncle, too, "had been receiving threatening phone calls and his whereabouts are still unknown."

Morales did not report either the beating or the phone calls to the police because "the police are corrupt" and because he feared retaliation from Lider partisans. Morales also testified that he did not inform the police about the beating because "the people who broke his arm would go to jail, but when they got out, they would seek retribution."

The IJ found the following additional facts. First, Morales's parents remain in Guatemala, but no longer live in Guatemala City, the country's capital. Second, Morales's siblings -- two brothers and a sister -- also continue to reside in Guatemala. Third, Morales "had no[] information regarding whether any harm had befallen" the other members of the Partido Party who were attacked the same day as Morales.

Nevertheless, the IJ denied Morales the relief that he sought. The IJ first addressed Morales's application for asylum. Pursuant to 8 U.S.C. § 1158(b)(1)(A), an applicant may be granted asylum "if the Secretary of Homeland Security or the Attorney General determines that such alien is a refugee within the meaning of" 8 U.S.C. § 1101(a)(42)(A). In turn, § 1101(a)(42)(A) requires that, to qualify as a refugee, "an applicant must prove either past persecution or a well-founded fear of future persecution if repatriated, on account of one of five enumerated grounds: race,

religion, nationality, membership in a particular social group, or political opinion." Giraldo-Pabon v. Lynch, 840 F.3d 21, 24 (1st Cir. 2016) (citing 8 U.S.C. § 1101(a)(42)(A)).

The IJ held that Morales had not established past persecution in Guatemala. Looking to the "frequency of the alleged harm," the IJ emphasized that Morales's "one encounter with members of the Lider Party" -- though it resulted in a severe beating -- "[did] not rise to the level of [past] persecution." Next, noting that establishing past persecution "requires evidence that the government participated in, or at least acquiesced in, the alleged harm," the IJ held that Morales had not presented evidence sufficient to show that the Guatemalan government was unable or unwilling "to control the conduct of private actors." The IJ also concluded that Morales could not establish a likelihood of future persecution in Guatemala, given that his "parents and siblings remain unharmed" in that country. Nor, the IJ stated, did Morales offer any information about the fate of four other Partido members who were beaten the same day he was that would tend to suggest that they were further harmed on the basis of their political affiliation or beliefs.

The IJ then rejected Morales's application for withholding of removal and protection under the CAT. Withholding of removal, the IJ noted, requires meeting a more demanding standard than the well-founded fear test that governs grants of

asylum. Thus, the IJ concluded that, in light of the ruling denying Morales's asylum application, Morales had, by definition, also failed to satisfy this heightened, clear-probability test for withholding of removal. And, the IJ noted, much like the asylum statute, the CAT and Department of Homeland Security ("DHS") regulations that implement it require an applicant to demonstrate that he will be tortured in his home country "by or at the instigation of or with the consent or acquiescence . . . of a public official or person acting in official capacity." In consequence, the IJ held that Morales could not obtain relief under the CAT.

The BIA affirmed the IJ's decision. The BIA explained that the "level of mistreatment" Morales was found to have suffered "does not amount to persecution," and the BIA relied for that conclusion on our decisions in Cabas v. Holder, 695 F.3d 169, 174 (1st Cir. 2012), Khan v. Mukasey, 549 F.3d 573, 575 (1st Cir. 2008), and Topalli v. Gonzales, 417 F.3d 128, 132 (1st Cir. 2005).

The BIA also upheld the IJ's "determination that the respondent did not establish that the authorities in Guatemala are unable or unwilling to protect him from violence in Guatemala." The BIA explained that, "[i]n order to qualify as persecution for purposes of asylum or withholding of removal, an act must be inflicted either by the government or by individuals or groups the government is unable or unwilling to control." But, the beating

Morales suffered was perpetrated by private actors, and the BIA found that Morales had failed to demonstrate that "reporting the crime to Guatemalan police would be futile."

The BIA also agreed that Morales did not have a well-founded fear of future persecution. Morales's parents are unharmed, even though they remain in Guatemala. Likewise, the BIA agreed that Morales's two brothers also remain unharmed, although the BIA did not appear to make any finding in that regard with respect to Morales's sister.[1] And, the BIA noted, Morales admitted that his "Partido Party colleagues and friends who were also assaulted" on the same day as Morales "remain in Guatemala and that, to his knowledge, they were not harmed because they moved."

The BIA then held: "we agree with the Immigration Judge that the respondent did not meet his burden of proof to show that his fear of persecution is country-wide and that it is unreasonable

---

[1] We note that the fact that Morales's family members remain in Guatemala and have not been harmed does not, by itself, foreclose a finding that there is "a pattern or practice" in Guatemala "of persecution of a group of persons similarly situated to the applicant." 8 C.F.R. § 1208.13(b)(2)(iii) (emphasis added). Not all family members are "similarly situated." See, e.g., Chen v. Holder, 551 F. App'x 580, 582-83 (1st Cir. 2013). The "lack of harm" to remaining family members in these circumstances is "entitled to weight in the decisional calculus" only where the family members are "similarly situated" and "the record does not provide a satisfactory differentiation between [the] petitioner and similarly-situated family members." Vasili v. Holder, 732 F.3d 83, 91 (1st Cir. 2013) (internal citations omitted). In this case, the BIA, to its credit, acknowledged Morales's argument that his family members were not members of the Partido Party.

to relocate to avoid harm."  Like the IJ, the BIA went on to address whether Morales could "satisfy the higher burden of proof required for withholding of removal," and concluded that he could not.  And the BIA also concluded that Morales could not meet the requirements for protection under the CAT because the evidence did "not establish that it is 'more likely than not' that he will be tortured by or with the acquiescence of a public official, or other person acting in an official capacity in Guatemala."

Morales now petitions for review of the BIA's decision.

## II.

"Usually, this court confines its review to the BIA's order that is being challenged . . . . However, when as here, the BIA adopts the decision of the IJ, and provides some analysis of its own, [we] review[] both decisions."  Lumataw v. Holder, 582 F.3d 78, 83 (1st Cir. 2009) (quoting Rashad v. Mukasey, 554 F.3d 1, 4 (1st Cir. 2009)).  We treat the rulings below that Morales has not met his burden of "demonstrat[ing] past persecution" as "factual determination[s] subject only to the highly deferential substantial evidence standard."  Id. at 84 (citing INS v. Elías-Zacarías, 502 U.S. 478, 483-84 (1992)).  Thus, the agency's decisions "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole," and may be "reversed only if the evidence presented by [the applicant] was such that a reasonable factfinder would have to conclude that

- 8 -

the requisite fear of persecution existed."  Elías-Zacarías, 502

U.S. at 481 (citations omitted).

An alien who has suffered past persecution is presumed

to have a well-founded fear of persecution and thus to be entitled

to a grant of asylum.  Chen v. Lynch, 814 F.3d 40, 45 (1st Cir.

2016) (quoting Singh v. Holder, 750 F.3d 84, 86 (1st Cir. 2014)).

Morales contends that the BIA erred in concluding that the level

of mistreatment he suffered -- because it involved only a single

beating followed by threatening phone calls -- did not rise to the

level of mistreatment that could qualify as persecution.  And he

attempts to distinguish the cases on which the BIA relied in

concluding otherwise.

But even if there were some basis for distinguishing

those cases, "[i]n order to qualify as a refugee" on the basis of

past persecution, Morales must also show that the harm he suffered

(assuming it was of a kind that could qualify as persecution) was

"the direct result of government action, government-supported

action, or government unwillingness or inability to control

private conduct."  Guaman-Loja v. Holder, 707 F.3d 119, 123 (1st

Cir. 2013) (citation and modifications omitted).  Or, put

otherwise, he "must demonstrate that the government would have

been unwilling or unable to pursue these lines of redress on the

petitioner's behalf."  Id. at 124 (citation and modifications

omitted).  Yet, despite the fact that the BIA and the IJ ruled

- 9 -

that Morales had failed to make the showing that the harm he had suffered was attributable to action -- or inaction -- by the government, Morales makes no argument in his briefing to us as to how either the BIA or the IJ erred in that regard, and so we may fairly deem that claim abandoned. See Anacassus v. Holder, 602 F.3d 14, 19 nn.5, 7 (1st Cir. 2010) (holding that undeveloped claims are deemed waived).

Moreover, we note that the record contains substantial evidence to support the BIA's and the IJ's finding that Morales failed to meet his burden of showing the requisite government action or inaction. To be sure, a government's failure to act on credible reports of private abuse can constitute inaction. See Ivanov v. Holder, 736 F.3d 5, 13-14 (1st Cir. 2013) (emphasizing that authorities' failure to respond to the petitioner's and the petitioner's parents' reports of severe beatings by skinheads "signals their unwillingness or inability to control [the petitioner's] persecutors"). And, the failure by a petitioner to make such a report is not necessarily fatal to a petitioner's case if the petitioner can demonstrate that reporting private abuse to government authorities would have been futile. See Pavlova v. INS, 441 F.3d 82, 91 (2d Cir. 2006) (concluding that the petitioner had met her burden of showing that the "Russian government was unwilling to control [private] religiously-motivated mistreatment of [a religious minority group]" in part because the petitioner

- 10 -

"testified that, based on her own experiences with police inaction . . . she 'had come to understand that [the private group] had some kind of relationship with the police and that realistically the police wouldn't do anything to help us'"); Ornelas-Chavez v. Gonzales, 458 F.3d 1052, 1058 (9th Cir. 2006) (holding that an applicant for withholding of removal "need not have reported . . . persecution to the authorities if he can convincingly establish that doing so would have been futile or have subjected him to further abuse").

But here, substantial evidence in the record supports the finding made below that Morales failed to demonstrate that the reason he did not report the mistreatment he suffered was that it would have been futile to do so. Morales testified that it was his belief that the police were "corrupt," but we have previously explained that a failure to report mistreatment -- even if based on the petitioner's subjective belief that authorities are corrupt -- is not, without more, sufficient to show that the mistreatment was attributable to the government, whether through action or inaction. See Barsoum v. Holder, 617 F.3d 73, 80 (1st Cir. 2010) (affirming the agency's finding of no past persecution because, although the petitioner claimed that the police "failed to investigate his story" after an initial visit to the authorities, the petitioner nevertheless "never again sought their help"); Orelien v. Gonzales, 467 F.3d 67, 72 (1st Cir. 2006) (denying the

petition for review because "the petitioner did not offer a scintilla of evidence to show that . . . he . . . sought governmental protection from the maraudings of [a] jealous co-worker, let alone that the authorities could not or would not provide protection"); see also Guaman-Loja, 707 F.3d at 124 (upholding the agency's finding that the petitioner had failed to show past persecution where the "individuals who allegedly persecuted [the petitioner] were without an apparent connection to the government, and [the petitioner] never sought aid or protection from the police or local authorities"); Galicia v. Ashcroft, 396 F.3d 446, 448 (1st Cir. 2005) (upholding the IJ's conclusion that the petitioner "did not show that the harassment he suffered was by the government or a group the government could not control" in part because the "beating [the petitioner] received was by young men, including one he knew from his church, and [the petitioner] made no effort to contact the authorities or any other group in the country that might be able to help him").

Moreover, Morales also testified that if he had reported the incidents that ground his claim of persecution to authorities, the perpetrators "would go to jail." And while Morales did testify to his concern that the perpetrators would seek to harm him again upon their release, such concern regarding what might happen after authorities did take the action that Morales believed would be taken does not suffice to demonstrate that the authorities were

- 12 -

unable or unwilling to take action to protect him. See Ortiz-Araniba v. Keisler, 505 F.3d 39, 42 (1st Cir. 2007) ("An applicant must show the government's acquiescence in the persecutor's acts or its inability or unwillingness to investigate and punish those acts, and not just a general difficulty preventing the occurrence of particular future crimes." (emphasis in original)); Silva v. Ashcroft, 394 F.3d 1, 7 (1st Cir. 2005) (affirming the BIA's finding that the petitioner did not suffer past persecution given a "lack of proof that [government] authorities would be unable or unwilling to do their duty, and thus safeguard the petitioner and his family").

Because Morales's contention in his brief that he has a well-founded fear of persecution depends entirely on his contention that the BIA and the IJ erred in ruling that he had not suffered past persecution, he provides us with no basis for reversing the agency's ruling denying his application for asylum. Nor does Morales offer us any basis on which to conclude that he could satisfy the even-more-demanding clear-probability test necessary to qualify for withholding of removal. See, e.g., INS v. Cardoza-Fonseca, 480 U.S. 421, 449-450 (1987). Morales's application for protection under the CAT likewise fails for substantially the same reason as do his challenges to the denials of his request for asylum and withholding of removal. See Romilus v. Ashcroft, 385 F.3d 1, 8 (1st Cir. 2004) ("[A]n applicant must

demonstrate that any torture he will suffer would be at the hands of the government or with the consent or acquiescence of the government."  (citing <u>Guzman</u> v. <u>INS</u>, 327 F.3d 11, 17 (1st Cir. 2003))).

## III.

The petition for review is **<u>denied</u>**.