# Matter of C-G-T-, Respondent

*Decided September 8, 2023*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) Determining whether the government is or was unable or unwilling to protect the respondent from harm is a fact-specific inquiry based on consideration of all evidence.

(2) A respondent's failure to report harm is not necessarily fatal to a claim of persecution if the respondent can demonstrate that reporting private abuse to government authorities would have been futile or dangerous.

(3) When considering future harm, adjudicators should not expect a respondent to hide his or her sexual orientation if removed to his or her native country.

FOR THE RESPONDENT: David B. Spitzer, Esquire, Boston, Massachusetts

BEFORE: Board Panel: MALPHRUS, Deputy Chief Appellate Immigration Judge; HUNSUCKER, Appellate Immigration Judge; NOFERI, Temporary Appellate Immigration Judge.

NOFERI, Temporary Appellate Immigration Judge:

The respondent, a native and citizen of the Dominican Republic, appeals from the Immigration Judge's March 3, 2023, decision denying his applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A) (2018).[1] The record will be remanded for the entry of a new decision.[2]

---

[1] The respondent has not challenged the Immigration Judge's denial of protection under the regulations implementing the Convention Against Torture. Thus, we deem this issue waived on appeal. *Matter of D-G-C-*, 28 I&N Dec. 297, 297 n.1 (BIA 2021).

[2] The Immigration Judge presided by televideo from the Immigration Adjudication Center in Richmond, Virginia, over the merits hearing in the Boston Immigration Court. The respondent correctly argues that precedent from the United States Court of Appeals for the First Circuit should govern this appeal because venue was changed to the Boston Immigration Court, which is located within the geographic boundaries of the First Circuit. *See Matter of Garcia*, 28 I&N Dec. 693, 703 (BIA 2023) (holding that the circuit law of the jurisdiction where venue lies will be controlling); *see also Bazile v. Garland*, 76 F.4th 5, 13–14 (1st Cir. 2023) (finding *Matter of Garcia* persuasive in light of the agency's expertise).

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent testified that he was abused by his father as a child because of his sexual orientation.  He testified that he knew he was gay at a young age.  He further testified that his father called him a girl, targeted him for particularly harsh treatment, and hit him almost every day.  The declarations from the respondent's brother and uncle state that they thought the respondent's father beat the respondent because the father thought his son was gay.  The respondent testified that he left his hometown when he was 17 years old, and he came to the United States in 2007.  The respondent testified that after he came to the United States, his mother told his father that he was gay, and the respondent's father then abused his mother.  In 2013, the respondent was diagnosed as HIV-positive.

The Immigration Judge found the respondent credible and concluded that he is a member of two cognizable particular social groups, namely homosexual Dominican males and Dominicans who are HIV-positive.  *See Matter of Toboso-Alfonso*, 20 I&N Dec. 819, 822–23 (BIA 1990) (holding that homosexuals in Cuba constituted a cognizable particular social group).  The Immigration Judge denied asylum based on the 1-year bar in section 208(a)(2)(B) of the INA, 8 U.S.C. § 1158(a)(2)(B).

The Immigration Judge concluded that the respondent did not establish that the harm he suffered by his father in the Dominican Republic was on account of a protected ground since his father did not then know he was gay.  The Immigration Judge also determined that the respondent did not establish past persecution because he did not show the government in the Dominican Republic was unable or unwilling to protect him from harm.  *See* INA § 101(a)(42), 8 U.S.C. § 1101(a)(42) (2018).  The Immigration Judge concluded that the respondent was not more likely than not to suffer future persecution because he did not show that anyone in the Dominican Republic, aside from his father, knew he was gay or HIV-positive and would harm him for that reason.

## II.  LEGAL ANALYSIS

### A.  1-Year Bar to Asylum

We affirm the Immigration Judge's denial of asylum because the respondent did not file his asylum application until July 2014, well beyond the 1-year deadline set forth in section 208(a)(2)(B) of the INA, 8 U.S.C. § 1158(a)(2)(B).  The respondent argues that his HIV-positive diagnosis should constitute changed circumstances excusing a late filing.  INA § 208(a)(2)(D), 8 U.S.C. § 1158(a)(2)(D).  We need not decide whether

the respondent's HIV-positive diagnosis in June 2013 amounts to changed circumstances because, even if it did, the respondent has not shown that his filing more than 1 year later was within a reasonable period of time after learning of the diagnosis. *See* 8 C.F.R. § 1208.4(a)(4)(ii) (2023); *see also Matter of T-M-H- & S-W-C-*, 25 I&N Dec. 193, 195 (BIA 2010) (acknowledging that delays of 1 year or more will be justified in rare cases).

## B.  Past Persecution on Account of a Protected Ground

The Immigration Judge determined that the respondent did not establish past persecution on account of his membership in the particular social group of homosexual Dominican males because his father was not told he was gay until after he left the Dominican Republic.[3]  However, the Immigration Judge's analysis does not address all relevant evidence regarding the respondent's father's motive for harm before the respondent left the Dominican Republic.  *See INS v. Elias-Zacarias*, 502 U.S. 478, 483 (1992) (describing an asylum applicant's evidentiary burden with respect to nexus); *Matter of N-M-*, 25 I&N Dec. 526, 532 (BIA 2011) ("A persecutor's actual motive is a matter of fact to be determined by the Immigration Judge and reviewed by us for clear error.").

For example, the Immigration Judge did not consider the declarations from the respondent, his brother, and his uncle stating that the respondent's father singled him out for abuse because the father thought the respondent was gay.  The Immigration Judge's nexus analysis also does not address the evidence that the respondent's father called the respondent a girl and expressed animus towards gay people.  We will remand the record to allow the Immigration Judge to consider all evidence of motive, as part of determining whether the respondent's membership in the group homosexual Dominican males was at least one central reason he suffered or may suffer harm.[4]  *See Matter of S-H-*, 23 I&N Dec. 462, 464–66 (BIA 2002) (describing the importance of clear and complete factual findings); *see also* INA § 208(b)(1)(B)(i), 8 U.S.C. § 1158(b)(1)(B)(i) (requiring a showing that a protected ground "was or will be at least one central reason" for the persecution).

---

[3]  The Immigration Judge correctly concluded that the respondent did not suffer past persecution on account of his HIV-positive diagnosis because the respondent was not diagnosed until after he left the Dominican Republic.  *See Matter of H-L-S-A-*, 28 I&N Dec. 228, 231 n.1 (BIA 2021) ("past persecution" must occur in the country of removal).  The respondent does not challenge that determination on appeal.

[4]  The Immigration Judge did not determine whether the respondent suffered harm that rises to the level of severity to constitute persecution.  On remand, the Immigration Judge should explicitly make that determination.

### C. Unable or Unwilling to Protect from Persecution

In determining that the respondent did not demonstrate the government was unable or unwilling to protect him from persecution, the Immigration Judge cited the respondent's failure to report the harm his father inflicted on him as a child. The respondent testified that it would have been futile for him to have reported the abuse as a child, and that reporting may have subjected him to additional abuse.

Whether a government is unable or unwilling to protect an individual from persecution is a question of fact that we review for clear error. *Ortiz-Araniba v. Keisler,* 505 F.3d 39, 42 (1st Cir. 2007). When engaging in this fact-specific inquiry, government authorities' timely response to a respondent reporting harm may be indicative of their ability or willingness to protect the respondent from harm. *See id.* at 42 (observing that "a prompt response by local authorities to prior incidents is 'the most telling datum'" in determining whether a government is able and willing to control persecutors) (quoting *Harutyunyan v. Gonzales*, 421 F.3d 64, 68 (1st Cir. 2005)); *see also Pan v. Holder*, 777 F.3d 540, 545 (2d Cir. 2015) (acknowledging that police inaction in response to the respondent's reporting of harm "tends to prove that the government is unwilling to protect its citizens").

"[A] failure to report mistreatment—even if based on the [respondent's] subjective belief that authorities are corrupt—is not, without more, sufficient to show that" the government is unable or unwilling to protect the respondent. *Morales-Morales v. Sessions*, 857 F.3d 130, 135 (1st Cir. 2017) (collecting cases, and affirming the determination that the respondent failed to demonstrate government authorities were unable or unwilling to protect him); *accord Vila-Castro v. Garland*, 77 F.4th 10, 13–14 (1st Cir. 2023).

However, failure to report harm is "not necessarily fatal" to a claim of persecution if the applicant "can demonstrate that reporting private abuse to government authorities would have been futile" or dangerous. *Rosales Justo v. Sessions,* 895 F.3d 154, 165 (1st Cir. 2018) (quoting *Morales-Morales*, 857 F.3d at 135).

In *Matter of S-A-*, the Board recognized that it may be futile or dangerous for an abused child to seek protection from the authorities. 22 I&N Dec. 1328, 1332–33 (BIA 2000). Multiple circuit courts have recognized that due to their young age, children may not be able to articulate their fear, or approach law enforcement officials, in the same way as an adult. *See, e.g.*, *Portillo Flores v. Garland*, 3 F.4th 615, 635–36 (4th Cir. 2021) (en banc); *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1071 (9th Cir. 2017) (en banc). When a child is being abused by a parent or relative, the child may be prevented by their abuser from contacting the authorities, or any attempt to report the harm might worsen the child's circumstances. *Portillo Flores*,

3 F.4th at 636. These are fact-specific inquiries, and we recognize that there may be a substantial difference in the ability of a young child to report abuse or recognize mistreatment as abuse, as compared to an older child. *See Bringas-Rodriguez*, 850 F.3d at 1071 (noting that younger children may lack the cognitive ability to understand harm as abuse).

On remand, the Immigration Judge should consider the reasonableness of the respondent's failure to seek assistance from the authorities in his country as part of considering all evidence regarding whether the government was unable or unwilling to protect the respondent. *See id.* at 1069 (stating that whether or not a victim reports harm, and evidence explaining why not, are factors in the unable or unwilling analysis). This analysis should include the respondent's testimony, available corroborating evidence, and country conditions reports. *See, e.g.*, *Rosales Justo*, 895 F.3d at 166 (emphasizing the importance of reviewing the entire record); *Matter of S-A-*, 22 I&N Dec. at 1332–33, 1335 (evaluating record evidence).[5] For example, the record indicates the respondent testified that children do not make reports to the authorities in the Dominican Republic and they do what they are told. He testified that his father would have killed him if he reported the abuse to the authorities, that he did not report to a teacher because everyone knew his father, and that he reported the abuse to his grandmother but she did not take any action. The respondent also testified that his access to government assistance was further limited because he lived in a small town far from the nearest city.

Determining whether it was reasonable for the respondent not to seek help from the authorities in his own country is a fact-based inquiry. *Cf. Rosales Justo,* 895 F.3d at 161 n.6. A mere "subjective belief" that reporting would be futile is not sufficient to establish that a government is unable or unwilling to provide protection. *Morales-Morales*, 857 F.3d at 135. Rather, a respondent must demonstrate, based on the record as a whole, that the government is unable or unwilling to protect him or her from persecution. *Compare Morales-Morales*, 857 F.3d at 136 (concluding that the respondent did not satisfy his burden because he testified that if he had reported incidents, the perpetrators "would go to jail"), *with Doe v. Att'y Gen. of U.S.*,

---

[5] If, on remand, the Immigration Judge finds that the respondent established past persecution, the respondent is entitled to a rebuttable presumption of future persecution for withholding of removal. 8 C.F.R. § 1208.16(b)(1) (2020). The Immigration Judge did not make findings regarding whether the respondent continues to fear persecution from his father. If the Immigration Judge determines that the respondent is not more likely than not to face persecution in the Dominican Republic from anyone else, the Immigration Judge may consider whether there are changed circumstances regarding the respondent's fear of his father now that the respondent is an adult. *See Matter of D-I-M-*, 24 I&N Dec. 448, 450 (BIA 2008) (describing the analytical framework for rebutting a presumption of future persecution); 8 C.F.R. § 1208.16(b)(1)(i)(A).

956 F.3d 135, 146–49 (3d Cir. 2020) (considering testimony and country conditions evidence in determining that the Ghanian government was unable or unwilling to protect a gay respondent notwithstanding that he did not report an assault to the police).

### D. Future Persecution on Account of a Protected Ground

The Immigration Judge concluded the respondent did not demonstrate that it is more likely than not he would be persecuted if returned to the Dominican Republic. Specifically, the Immigration Judge found the evidence did not demonstrate that anyone in the Dominican Republic other than the respondent's father would know the respondent is gay.[6] To the extent this conclusion could be viewed as based on an assumption that the respondent could avoid future harm by not engaging in conduct that would identify himself as gay, it would be in error.

As a general matter, we do not base consideration of an applicant's fear of future harm on the ability or requirement to hide his or her sexual orientation. Protection under asylum and withholding of removal is available to applicants who fear persecution on account of their membership in a particular social group based on sexual orientation. *Kadri v. Mukasey*, 543 F.3d 16, 21 (1st Cir. 2008); *Matter of Toboso-Alfonso*, 20 I&N Dec. at 822–23. Sexual orientation, like other protected grounds, is "a characteristic that either is beyond the power of an individual to change or is so fundamental to individual identity or conscience that it ought not be required to be changed." *Matter of Acosta*, 19 I&N Dec. 211, 233 (BIA 1985), *modified on other grounds by Matter of Mogharrabi*, 19 I&N Dec. 439 (BIA 1987).

As such, when considering future harm, adjudicators should not expect a respondent to hide his or her sexual orientation if removed to his or her native country. *See Doe*, 956 F.3d at 154 (holding that it was not reasonable to require an applicant "to return to hiding and suppressing his identity and sexuality as a gay man" in order to avoid persecution) (citing *Shan Zhu Qiu v. Holder*, 611 F.3d 403, 409 (7th Cir. 2010) (concluding that requiring a respondent to "cease the practice of [his religion] or hope to evade discovery . . . runs contrary to the language and purpose of our asylum laws")); *Singh v. Sessions*, 898 F.3d 518, 522 (5th Cir. 2018) ("[A]n [asylum applicant] cannot be forced to live in hiding in order to avoid persecution."). "[W]e see no appreciable difference between an individual . . . being persecuted for

---

[6] The Immigration Judge also determined that the respondent did not provide any evidence that anyone in the Dominican Republic would know he is HIV-positive. On remand, the Immigration Judge may further consider the respondent's claim based on his HIV-positive status, consistent with this decision.

being a homosexual and being persecuted for engaging in homosexual acts." *Karouni v. Gonzales*, 399 F.3d 1163, 1173 (9th Cir. 2005).[7]

## III.  CONCLUSION

We will remand the record for further consideration of the respondent's claim for withholding of removal.  Specifically, the Immigration Judge should reevaluate whether the respondent established past persecution and whether the Dominican government was unable or unwilling to protect the respondent from any past persecution on account of his asserted particular social group of "homosexual Dominican males."  The Immigration Judge should also reevaluate whether the respondent has established that he is more likely than not to suffer persecution on account of his membership in either of his asserted particular social groups, and consider whether the Dominican government would be unable or unwilling to protect the respondent in the future.  On remand, the Immigration Judge may conduct further proceedings as appropriate.  In remanding, we express no opinion as to the ultimate outcome of these proceedings.

Accordingly, the following order will be entered.

**ORDER:**  The record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[7]  Previously, in *Matter of Toboso-Alfonso*, the Board distinguished between the applicant's "status as a homosexual" (i.e., membership in the particular social group) and his "conduct . . . e.g., . . . engaging in homosexual acts," and declined to reach the question of whether harm based on conduct could constitute persecution on account of the protected ground, in part because "conduct" was criminalized in the United States at that time. *Matter of Toboso-Alfonso*, 20 I&N Dec. at 821–22; *see id.* at 825 (citing *Bowers v. Hardwick*, 478 U.S. 186 (1986)).  United States law has since changed.  *See Karouni v. Gonzales*, 399 F.3d at 1173 (citing *Lawrence v. Texas*, 539 U.S. 558, 567 (2003)).