**FILED**
**United States Court of Appeals**
**Tenth Circuit**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

**October 6, 2025**

_____

**Christopher M. Wolpert**
**Clerk of Court**

DEISY ERNESTINA ROSAS-GARCIA;
RAFAEL PICO-GARCIA; JOHN DOE,
a minor,

     Petitioners,

v.

PAMELA J. BONDI, United States
Attorney General,

     Respondent.

No. 24-9567
(Petition for Review)

_____

### ORDER AND JUDGMENT[*]

_____

Before **HARTZ**, **MORITZ**, and **ROSSMAN**, Circuit Judges.

_____

Deisy Ernestina Rosas-Garcia, along with her husband Rafael Pico-Garcia and

their minor child, seeks review of a Board of Immigration Appeals (BIA) decision

affirming an Immigration Judge's (IJ) order denying asylum and ordering removal.[1]

Exercising jurisdiction under 8 U.S.C. § 1252, we deny the petition.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. _See_ Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

[1] The BIA also affirmed the IJ's denial of Ms. Rosas-Garcia's applications for
restriction on removal and relief under the United Nations Convention Against

**I.**

**A.**

Petitioners entered the United States without inspection in November 2022. They conceded removability in the ensuing removal proceeding and sought asylum under the Immigration and Nationality Act (INA) based on persecution in their native Colombia. On April 24, 2024, Mr. Pico-Garcia, appearing pro se, testified on behalf of the petitioners at a hearing before the IJ. According to his testimony, the family fled Colombia because of extortionist threats by the BACRIM, which is a Spanish acronym for "bandas criminales"—which, in English, means criminal gangs.

Mr. Pico-Garcia told the IJ that their problems began when they were living with his mother-in-law above a restaurant they owned in Lebrija in northeastern Colombia. The restaurant was doing well when, in 2020, the local BACRIM started demanding "vaccines" or payments in exchange for the gang's protection of the restaurant. R. vol. 1 at 100. Mr. Pico-Garcia explained the restaurant was vulnerable due to general lawlessness in the area. Initially, the family made the weekly payments demanded by the BACRIM. These payments started at between 200,000 and 250,000 pesos but increased over time. By November 2021, the BACRIM was demanding one million pesos per week. Mr. Pico-Garcia's mother-in-law refused to pay.

---

Torture, which carry no derivative beneficiaries. She does not seek review of those determinations.

2

At first, the BACRIM responded by withdrawing their protection, saying they "would not be responsible for any damages" to the restaurant. *Id.* at 107. The family closed the restaurant for a few days, hoping the gang would forget about them. But when the restaurant reopened, the BACRIM returned. They threatened Mr. Pico-Garcia's son and nephew: "they said that if we did not cooperate with what they were doing that the ones to pay would be the children and that would be my son and my sister-in-law's son." *Id.* at 108. This threat prompted Mr. Pico-Garcia to move with his wife and son to Bucaramanga, a town about 45 minutes away. He testified that the BACRIM did not contact him or his immediate family after they moved to Bucaramanga. Nonetheless, because the BACRIM continued to threaten them indirectly through his mother-in-law, the family fled to the United States.

When Mr. Pico-Garcia moved with his family to Bucaramanga, his mother-in-law stayed behind and continued to operate the restaurant a few days a week. Due to construction in the area, business at the restaurant steadily declined, but the BACRIM continued their demands and threats. BACRIM members told Mr. Pico-Garcia's mother-in-law they would harm her children and grandchildren if anyone reported their activities to the police. Eventually, the mother-in-law closed the restaurant and moved to Medellin where she had been living for a few months at the time of the April 2024 hearing. Mr. Pico-Garcia testified that she had not been bothered by the BACRIM since moving to Medellin.

3

**B.**

On April 29, 2024, the IJ issued a decision denying asylum and ordering petitioners' deportation to Colombia. The IJ found Mr. Pico-Garcia to be a credible witness but concluded the threats made against the family, "[w]hile no doubt frightening, . . . [fell] below the level of persecution." *Id.* at 42 (citing *Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003)). The IJ also considered whether the petitioners could nonetheless establish a well-founded fear of future persecution but found the nexus requirement to be lacking:[2] "The harm that the respondents fear in Colombia is violence related to general criminal activity, not violence that would be perpetrated against them on account of a protected ground." *Id.* And "generalized criminal violence is not alone a basis for asylum." *Id.* at 43. The IJ went on to conclude that petitioners, having failed to report the threats to local police, could not show the Colombian government was unable or unwilling to protect them, as required by the INA for an asylum claim. Finally, the IJ concluded asylum was unavailable because the record established the petitioners could safely relocate within Colombia.

**C.**

In a single-member decision issued under 8 C.F.R. § 1003.1(e)(5), the BIA affirmed the IJ's asylum decision on three grounds. First, it agreed the threats made

---

[2] An asylum applicant must establish a "nexus" between the alleged persecution and one of the following protected grounds: race, religion, nationality, membership in a particular social group, or political opinion. *Miguel-Pena v. Garland*, 94 F.4th 1145, 1159 (10th Cir. 2024), *cert. denied*, 145 S. Ct. 545 (2024); *see* 8 U.S.C. § 1101(a)(42) (defining "refugee").

4

against the petitioners did not rise to the level of persecution under this court's caselaw. Second, it upheld the IJ's finding that petitioners failed to show the government was unable or unwilling to control the BACRIM members who threatened them. The BIA "acknowledge[d] that the respondent's failure to report is not necessarily fatal to her claim if she can otherwise demonstrate that filing a police report would have been futile or dangerous." *Id.* at 5 (internal quotation marks omitted). But it concluded Mr. Pico-Garcia's "generalized testimony concerning [the BACRIM's] involvement with the Colombian government and police complicity with the group, without more, [was] insufficient" to make that showing. *Id.* (citing *Aviles-Gonzalez v. Garland*, No. 23-9547, 2024 WL 3066987, at *2-3 (10th Cir. June 20, 2024)). Finally, the BIA upheld the IJ's finding that the petitioners could safely relocate within Colombia: "As the Immigration Judge found, the respondent was able to relocate to Bucaramanga and live there for 1 year without being harmed." *Id.* Because these issues were dispositive to the asylum claim, the BIA did not consider petitioner's challenge to the IJ's nexus determination.

This timely petition followed.

## II.

Whether a noncitizen has demonstrated persecution in her home country–the overarching issue here—is a question of fact that we review for substantial evidence. *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008). Under this highly deferential standard, "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Singh v.*

5

*Bondi*, 130 F.4th 848, 860 (10th Cir. 2025) (internal quotation marks omitted). The scope of our review is "limited to 'the administrative record on which the order of removal is based.'" *Singh*, 130 F.4th at 859 (quoting 8 U.S.C. § 1252(b)(4)(A)). "Our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Id.* at 860 (internal quotation marks and brackets omitted). "We review the BIA's legal determinations de novo." *Dallakoti v. Holder*, 619 F.3d 1264, 1267 (10th Cir. 2010).

Where, as here, a single BIA member provides a reasoned decision in a brief order under 8 C.F.R. § 1003.1(e)(5), we limit the scope of our review to the grounds cited therein. *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007). Generally, "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). But we may consult the IJ's more complete explanation of these issues to better understand the BIA's discussion. *See id.*

## A.

To qualify for asylum, petitioners bear the burden of establishing they are refugees under the INA. *Matumona v. Barr*, 945 F.3d 1294, 1300 (10th Cir. 2019). "A refugee is a person who is unable or unwilling to return to his country of nationality, and unable or unwilling to avail himself of that country's protection, because of persecution or a well-founded fear of persecution on account of any of five protected grounds." *Singh*, 130 F.4th at 857-58 (internal quotation marks omitted); *see* 8 U.S.C. § 1101(a)(42). An asylum applicant who establishes past

6

persecution is entitled to a "rebuttable presumption of a well-founded fear of future persecution." *Singh*, 130 F.4th at 858.  An applicant who fails to show past persecution may still qualify for asylum based on a well-founded fear of future persecution if certain conditions are met.  *Tulengkey v. Gonzales*, 425 F.3d 1277, 1281 (10th Cir. 2005).

## B.

Petitioners raise three arguments on appeal.  First, they contend the BIA erred in holding the threats by the BACRIM did not rise to level of persecution.  Second, they challenge the agency's evidentiary finding regarding their claim that the Colombian government was unable or unwilling to protect them.  Third, they argue the BIA erred in concluding they could safely relocate within Colombia.  Our determination regarding any one of these issues is dispositive, so we need not address all three.

**1. Substantial evidence supports the BIA's determination that petitioners failed to establish the Colombian government was unable or unwilling to protect them.**

Petitioner's claim is based on alleged "private persecution," that is persecution not by the government but a nongovernmental group, in this case the BACRIM.  *See Singh*, 130 F.4th at 858 (defining private persecution).  Accordingly, petitioners had to show the Colombian government was "unable or unwilling to control" the BACRIM.  *Id.* at 859 (internal quotation marks omitted); *see also Niang v. Gonzales*, 422 F.3d 1187, 1194 (10th Cir. 2005) ("The persecution must have been imposed by the government or by groups which the government is unwilling or unable to

control." (internal quotation marks omitted)).  Whether the government failed an

asylum applicant in this regard is a "'fact-specific inquiry based on consideration of

all evidence.'"  *Singh*, 130 F.4th at 860 (quoting *In re C-G-T-*, 28 I. & N. Dec. 740,

740 (BIA 2023)).  Typically, such evidence falls into two categories—country

conditions reports and/or evidence of the government's specific response to the

alleged persecution.  *See id.* at 860.  The record in this case contains neither.

Petitioners submitted no documentary evidence describing country conditions in

Colombia.  And Mr. Pico-Garcia testified they did not report their ordeal to the police

out of fear of retaliation and a belief that doing so would have been futile.[3]

Failure to report persecution to the authorities is not necessarily fatal to an

asylum claim.  *Singh*, 130 F.4th at 862.  But under those circumstances, the petitioner

must show that reporting the persecution to authorities "would have been futile or

---

[3] JUDGE TO MR. PICO-GARCIA:  And I understand that these criminals were threatening consequences if you reported to the police but did you ever report to the police or your partner, your wife, ever report to the police?

MR. PICO-GARCIA TO JUDGE:  No, no. Honestly, no, ma'am.  We were afraid.

JUDGE TO MR. PICO-GARCIA:  What did you think would happen if you reported to the police?

MR. PICO-GARCIA TO JUDGE:  That is, as I've said, unfortunately, in my country we see this a lot.  There is too much corruption.  These people work for the government.  They ask for vaccines but then they also pay vaccines to the police so they let them work.  So obviously, any information about a report against them, they know.

R. vol. 1 at 114.

dangerous." *Id.* Petitioners argue that Mr. Pico-Garcia's testimony was enough to make such a showing and that the agency erred in concluding otherwise. "To prevail on [this] factual challenge to the Board's unable-or-unwilling ruling, [petitioners] must convince us that the administrative record compels any reasonable adjudicator to find that [the Colombian government] was either unable or unwilling to protect" them. *Id.* at 863 (internal quotation marks omitted). We are not so convinced. The BIA has long acknowledged there are circumstances in which it can be futile or dangerous for someone being persecuted to seek police protection. *See In re C-G-T-*, 28 I. & N. Dec. at 743 (collecting cases). It did not ignore that line of cases here but concluded Mr. Pico-Garcia's "generalized testimony" about alleged police corruption was not enough to demonstrate that it would have been futile or dangerous to go to the police in this case. R. vol. 1 at 5. Based on the record before us, we cannot say any reasonable adjudicator would be compelled to conclude the contrary.

"[A] failure to report mistreatment—even if based on the petitioner's subjective belief that authorities are corrupt—is not, without more, sufficient to show" the government is unable or unwilling to control the alleged persecutors. *Morales-Morales v. Sessions*, 857 F.3d 130, 135 (1st Cir. 2017); *see also Singh*, 130 F.4th at 864, n.16 (rejecting petitioner's police-complicity argument because it was based solely on his "subjective belief" that the police would not protect him); *In re C-G-T-*, 28 I. & N. Dec. at 744 ("A mere 'subjective belief' that reporting would be futile is not sufficient to establish that a government is unable or unwilling to provide protection."). To prevail on such a claim, petitioners generally must

9

provide specific examples of police misconduct or failures, justifying their subjective belief that making a report would have been futile or dangerous. *See, e.g.*, *Rosales Justo v. Sessions*, 895 F.3d 154, 165 (1st Cir. 2018) (overruling BIA's reversal of IJ's grant of asylum in failure-to-report case where IJ's decision was supported by first-hand testimony of petitioner and his wife, as well as "significant documentary evidence . . . showing police corruption and police complicity in organized crime"); *Pan v. Holder*, 777 F.3d 540, 544-45 (2d Cir. 2015) (granting petition for review in failure-to-report case where IJ ignored corroborating witness testimony and State Department reports showing police corruption).

The only evidence of police corruption here was Mr. Pico-Garcia's testimony asserting his belief that the BACRIM bribe the police. *See supra*. n.2. But he gave no specific examples of such misconduct. Nor did he describe any instance in which the police failed to investigate reports or take necessary action against the BACRIM. Recall, the record contains no independent reports describing law enforcement conditions in Colombia. In sum, this is not a record that would compel any reasonable adjudicator to conclude the Colombian government was unable or unwilling to protect petitioners, as required to reverse the BIA on this issue. *Singh*, 130 F.4th at 863.

**2. Petitioners do not adequately challenge the BIA's determination about future persecution.**

Failure to establish past persecution does not necessarily mean petitioners cannot show a well-founded fear of future persecution. *Tulengkey*, 425 F.3d at 1281. In addition to being subjectively genuine, such a fear must be "objectively reasonable." *Id.* And the regulations prohibit a finding of reasonableness "if the applicant can avoid persecution by relocating to another part of the country and it would be reasonable to expect her to do so." *Ritonga v. Holder*, 633 F.3d 971, 976-77 (10th Cir. 2011) (citing 8 C.F.R. § 1208.13(b)(2)(ii), (b)(3)). The BIA relied on this provision in rejecting petitioners' future-persecution claim, observing petitioners lived safely in Bucaramanga for a year before leaving Colombia, and the grandmother and sister-in-law were still living safely in Colombia.

Petitioners argue this finding was based on the BIA's erroneous conclusion that they failed to establish past persecution. They contend that if we overturn the BIA's past persecution finding, then we "must also find that the persecution continued when they relocated internally . . . because BACRIM continued to threaten" them. Op. Br. at 10. Beyond this, petitioners do not challenge the BIA's finding that they could safely relocate, including its observation that the mother-in-law, who was the direct recipient of the BACRIM's threats, continues to reside safely in Colombia. We have affirmed the BIA's past persecution determination for the reasons explained above. Accordingly, petitioners' argument

regarding future persecution, which depends entirely on their claim that the past persecution finding was erroneous, also fails. *Morales-Morales*, 857 F.3d at 136.

### III.

Because petitioners have provided no basis for reversing the BIA's denial of asylum, the petition for review is denied.

Entered for the Court

Veronica S. Rossman
Circuit Judge