# Matter of V-A-B-, Applicant

*Decided May 8, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The proposed particular social group defined as "married Mexican women who are unable to leave their relationship" is not cognizable under the Immigration and Nationality Act because it is circularly defined and lacks particularity.

(2) The existence of a lawful marriage cannot be presumed simply because two persons are cohabitating or have children in common.

FOR THE APPLICANT: Gina M. Fraga, Esquire, Lake Worth, Florida

FOR THE DEPARTMENT OF HOMELAND SECURITY: Michael J. Gross, Assistant Chief Counsel

BEFORE: Board Panel: HUNSUCKER, GEMOETS, and CHABAN, Appellate Immigration Judges.

HUNSUCKER, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's August 19, 2025, decision granting the applicant's application for withholding of removal under section 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(A) (2024), and denying as moot her application for protection under the regulations implementing the Convention Against Torture ("CAT").[1] The appeal will be sustained in part, and the record will be remanded.

The applicant, a native and citizen of Mexico, has resided in the United States continuously since 2000. She entered the United States three times—once in 1994, and twice in 2000. The applicant has seven children with her former husband. She married her former husband in a ceremony in the United States on October 24, 2016. She claims he abused her in Mexico and in the United States. She alleges she entered into a relationship with him when she was 16 years old and he started mistreating her a year later, but she

---

[1] The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994). 8 C.F.R. §§ 1208.16(c), 1208.17 (2026); 8 C.F.R. § 1208.18(a) (2020).

never reported the abuse to the Mexican authorities because they work with his family, who she alleges is part of the Los Gonzalez organized crime family.  The applicant claims she fears going back to Mexico because her former husband threatened to kill her when she left him and he might use his family in Mexico to harm her.

On January 7, 2025, the Immigration Judge granted the applicant withholding of removal under section 241(b)(3)(A) of the INA, 8 U.S.C. § 1231(b)(3)(A), finding she was persecuted by her former husband on account of her membership in her proposed social group of "married Mexican women who are unable to leave their relationship."  On June 6, 2025, this Board remanded the record for the Immigration Judge to determine, among other things, whether the applicant was persecuted in Mexico on account of her proposed social group and whether the applicant was in a common-law marriage while residing in Mexico.  In a decision dated August 19, 2025, the Immigration Judge determined that the applicant established eligibility for withholding of removal and granted her application for such relief.

On de novo review, we conclude that the applicant's proposed particular social group defined as "married Mexican women who are unable to leave their relationship" is not cognizable because it is circularly defined and lacks particularity.  The Immigration Judge relied on *Matter of A-R-C-G-*, 26 I&N Dec. 388 (BIA 2014), in finding the applicant's proposed social group of "married Mexican women who are unable to leave their relationship" is cognizable.  However, the Attorney General has overruled *Matter of A-R-C-G-* and reinstated *Matter of A-B-*, 27 I&N Dec. 316 (A.G. 2018) ("*Matter of A-B- I*"), and *Matter of A-B-*, 28 I&N Dec 199 (A.G. 2021) ("*Matter of A-B- II*").  *Matter of S-S-F-M-*, 29 I&N Dec. 207 (A.G. 2025).[2] In *Matter of A-B- I*, the Attorney General held that *Matter of A-R-C-G-* improperly recognized "married women in Guatemala who are unable to leave their relationship" as a particular social group without correctly applying the standards set forth by the Board's own precedents. 27 I&N Dec. at 319.  In doing so, the Attorney General emphasized that simply because the terms used to describe the proposed social group, such as women and marriage, have commonly understood definitions "does not establish that these terms have the requisite particularity in identifying a distinct social group as such, or that people who meet all of those criteria constitute a discrete social group."  *Id.* at 335.  A particular social group must not be

---

[2]  *Matter of A-B- I* and *Matter of A-B- II* had previously been vacated by *Matter of A-B-*, 28 I&N Dec. 307 (A.G. 2021) ("*A-B- III*").

amorphous or subjective. Rather, it must be defined by characteristics that provide a clear benchmark for determining who qualifies as a member of the group. *Id*. This is where the applicant's proposed group fails.

The applicant's proposed social group is also impermissibly circular as it is defined by the alleged persecution of "being unable to leave" the relationship. *See id.* at 334–35; *see also Perez-Zenteno v. U.S. Att'y Gen.*, 913 F.3d 1301, 1309–10 (11th Cir. 2019) (concluding that a proposed social group was impermissibly circular because it was "defined in large measure by the risk of persecution"). The proposed social group at issue here, like in *Matter of A-R-C-G-*, does not exist independently of the harm asserted "because the inability 'to leave' was created by [the] harm or threatened harm." *Matter of A-B- I*, 27 I&N Dec at 335. To be cognizable, particular social groups "*must* exist independently of the harm asserted." *Id.* at 334 (citations and internal quotation marks omitted). Thus, "[s]ocial groups defined by their vulnerability to private criminal activity likely lack the particularity required under [*Matter of M-E-V-G-*, 26 I&N Dec. 227 (BIA 2014)], given that broad swaths of society may be susceptible to victimization." *Id.* at 335. Accordingly, the applicant has not established that her proposed social group of "married Mexican women unable to leave their relationship" is meaningfully distinguishable from the group discussed in *Matter of A-B- I* and has the required particularity to be cognizable under the INA.

The applicant contends that *Matter of A-B- I* is new law and should not be applied retroactively to her case. However, the Attorney General's decision in *Matter of A-B- I* is a clarification of the evolving concept of particular social groups and is not an "abrupt departure" from existing law. The applicant has not articulated how *Matter of A-B- I* deviates from the long-standing requirement that applicants articulate a cognizable particular social group. *See Matter of M-E-V-G-*, 26 I&N Dec. at 237 (describing subtle evolution of the concept of particular social group); *accord Matter of W-G-R-*, 26 I&N Dec. 208, 211–12 (BIA 2014), *vacated in part on other grounds sub nom. Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016).

The applicant also relies on *Perez-Zenteno* to contend that social groups can be cognizable based solely on the presence of immutable characteristics. However, this is a misunderstanding of *Perez-Zenteno*, which affirmed the Board's finding that "even if the factors of immutability and particularity were met, the respondents did not establish that their claimed group is viewed as socially distinct within Mexican society." 913 F.3d at 1308–09. The applicant's argument is inconsistent with our precedent, which requires a social group be composed of members who share a common immutable

characteristic, be defined with particularity, and be socially distinct within the society in question. *Matter of M-E-V-G-*, 26 I&N Dec. at 237. The applicant's proffered particular social group is not cognizable simply because it is defined by some characteristics that are immutable.

Even if the applicant's social group were cognizable, the Immigration Judge did not make sufficient findings to demonstrate that the applicant was a member of the group while residing in Mexico. The Immigration Judge's decision states that the applicant's "common-law husband" began abusing her when she was 17 years old, but the Immigration Judge provides no analysis regarding how the applicant had a "common-law husband." Citing the applicant's and her former husband's residence "as a domestic unit in Mexico since she was a teenager and for nearly thirty years" and that they "lived together as a family and had seven children together for decades in Mexico," the Immigration Judge determined that they "engaged in a common-law marriage in Mexico" prior to their "legal marriage in the United States" in 2016.

"The legal validity of a marriage is generally determined by the law of the place of the celebration." *Matter of Da Silva*, 15 I&N Dec. 778, 779 (BIA 1976). Thus, when determining whether a person is or was married, the Immigration Judge must, at a minimum, determine the place of the alleged marriage, the date of the alleged marriage, and the applicable law existing at the time and place of the claimed marriage. The Immigration Judge must then determine whether the applicant was married under the applicable law and, if so, the dates the marriage existed. The existence of a lawful marriage cannot be presumed simply because two persons are cohabiting or have children in common. *See generally Matter of Garcia*, 16 I&N Dec. 623, 624 (BIA 1978) (concluding that a common-law marriage had not been established under Texas law where the birth certificates for the children listed the purported common-law husband as a father but not as a husband). Thus, even if the applicant's proffered particular social group were cognizable, the findings of the Immigration Judge are insufficient to establish that the applicant was married while present in Mexico such that she is a member of her proposed group.

The Immigration Judge also clearly erred in finding that the Mexican Government was or would be unable or unwilling to control the individuals the applicant claims may harm her. *See Matter of C-G-T-*, 28 I&N Dec. 740, 743 (BIA 2023) ("Whether a government is unable or unwilling to protect an individual from persecution is a question of fact we review for clear error."). Persecution must be inflicted under government sanction or by private actors that the government is unwilling or unable to control. *Ayala v. U.S. Att'y*

*Gen.*, 605 F.3d 941, 950 (11th Cir. 2010). The Government of Mexico "must have some role in or responsibility for the 'persecution.'" *Matter of A-B- II*, 28 I&N Dec. at 204–05. "'[U]nable' must mean more than the failure to prevent or solve a particular crime." *Id.* at 205. Immigration Judges "should not focus narrowly on whether government efforts to protect the applicant were effective in her specific case, or focus on a few cases where perpetrators went unpunished." *Id.* Furthermore, where a private actor is concerned, the applicant must present evidence that she reported the persecution to her local government authorities or that it would have been futile to do so. *See Lopez v. U.S. Att'y Gen.*, 504 F.3d 1341, 1345 (11th Cir. 2007); *Matter of C-G-T-*, 28 I&N Dec. at 743–44 (concluding that a failure to report abuse to authorities, even if based on a subjective belief they would not assist, is insufficient to show the government is unable or unwilling to control private violence).

The Immigration Judge's findings as to the government's inability or unwillingness to control the private actors are clearly erroneous as they are unsupported by evidence of record. For instance, the Immigration Judge relied on the applicant's claim that her former husband belonged to the Los Gonzalez crime family, which is connected to the Mexican Government. The applicant's assertion, however, is speculative and not supported by the evidence. While the applicant testified that her former husband had connections with individuals in law enforcement, she did not provide any credible evidence or testimony concerning such connections.

The Immigration Judge also relied on the applicant's testimony that she cannot call the Mexican police because they do not protect women. This finding is contradicted by record evidence including the Department of State country report, which shows that the Mexican Government investigates, prosecutes, punishes, and imprisons domestic abusers. Considering the totality of the testimony and evidence, the Immigration Judge's finding that the Mexican Government was or would be unable or unwilling to protect the applicant is clearly erroneous. *See Matter of A-B- II* at 202 (concluding that the ability of a government to protect "has always been applied as a matter of degree, rather than as a guarantee of absolute protection").

The Immigration Judge's finding that the applicant is unable to safely and reasonably relocate within Mexico is also clearly erroneous. 8 C.F.R. § 1003.1(d)(3)(i) (2026). "When the applicant has suffered personal harm at the hands of only a few specific individuals, internal relocation would seem more reasonable than if the applicant were persecuted, broadly, by her country's government." *Matter of A-B- I*, 27 I&N Dec. at 345. Here, the applicant never attempted to relocate in Mexico. Instead, she repeatedly

came to the United States. In finding the applicant could not relocate, the Immigration Judge concluded that it would be unreasonable for her to relocate within Mexico and live safely given her circumstances, including her lack of education, inability to read, write, or drive, and a lack of any sort of consistent employment.

This finding is unsupported by the evidence. For instance, the applicant testified she owns a car and has driving experience. She repeatedly testified she earns money selling lunches in the United States. She indicated in one of her applications for relief that she is self-employed and listed her occupations from 2019 as babysitting, agriculture, and cooking. The Immigration Judge made no findings regarding why the applicant would not be able to apply such skills and find employment in Mexico, and the evidence does not establish she would be denied assistance by friends, family, law enforcement, or domestic violence organizations. The Immigration Judge also did not cite to any evidence showing that the applicant sought assistance or had been denied assistance by friends, family, law enforcement, or domestic violence organizations.

Moreover, the applicant did not demonstrate that the reach of her former husband or Los Gonzalez is country-wide, such that her internal relocation would not reasonably provide her safety from the harm she claims to fear. The record does not demonstrate that the applicant's former husband has the ability to locate her if she were to return to Mexico, especially since they have been separated for more than 3 years and he remains in the United States. In addition, the applicant has not established that she would be unable to request law enforcement protection from him. The applicant thus has not demonstrated that internal relocation would not be reasonable, and the Immigration Judge's findings are clearly erroneous as they are unsupported by the record evidence. *See* 8 C.F.R. § 1208.16(b)(2) (2026); 8 C.F.R. § 1208.16(b)(3) (2020).

As the preceding issues are dispositive of the applicant's application for statutory withholding of removal, we need not address any remaining arguments on appeal.[3] *See INS v. Bagamasbad*, 429 U.S. 24, 25 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach."). The

---

[3]   Our holdings on the government's ability and willingness to control those the applicant fears and the feasibility of internal relocation are dispositive of the applicant's family-based particular social group claim. She has waived her claims based on other proffered particular social groups by failing to raise them during the remanded proceedings. *See Matter of R-S-H-*, 23 I&N Dec. 629, 638 (BIA 2003) (noting that a respondent waives the opportunity to present an issue on appeal if it was not raised before the Immigration Judge).

applicant has not established she suffered past persecution or shown a clear probability of a future threat to her life or freedom on account of a protected ground. *See* 8 C.F.R. § 1208.16(b)(1), (2) (2026). Thus, we will reverse the Immigration Judge's grant of withholding of removal under the INA.

Because the Immigration Judge denied CAT protection as moot based on the grant of statutory withholding of removal, we must remand the record to the Immigration Judge to adjudicate the application for protection under the CAT in the first instance. *See* 8 C.F.R. §§ 1208.16(c)–1208.18. On remand, the Immigration Judge should prioritize the resolution of this case. The parties should be afforded an opportunity to update the record regarding the applicant's application for protection under the CAT. In remanding, we express no opinion as to the ultimate disposition of this case.

**ORDER:** DHS' appeal is sustained, and the Immigration Judge's grant of withholding of removal under section 241(b)(3)(A) of the Immigration and Nationality Act is vacated.

**FURTHER ORDER:** The record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion and for the entry of a new decision on the applicant's application for protection under the Convention Against Torture.