21-6293-ag
Castellanos-Ventura v. Garland

# United States Court of Appeals
# for the Second Circuit

August Term, 2023

(Submitted: May 28, 2024      Decided: September 13, 2024)

Docket No. 21-6293-ag

_____

BESSY ORBELINA CASTELLANOS-VENTURA,

*Petitioner*,

v.

MERRICK B. GARLAND, UNITED STATES
ATTORNEY GENERAL,

*Respondent*.

_____

Before:

NEWMAN, LOHIER, and PÉREZ, *Circuit Judges*.

Petitioner Bessy Orbelina Castellanos-Ventura, a citizen of Honduras, seeks review of a decision of the Board of Immigration Appeals (BIA) affirming a decision of an Immigration Judge denying her application for asylum, withholding of removal, and relief under the Convention Against Torture. The agency assumed without deciding that Castellanos-Ventura had suffered past persecution on account of her membership in a cognizable social group of

Honduran women. The agency nevertheless denied her application because it found that she failed to show that the Honduran government was "unable or unwilling to control" her persecutors. Because we agree with Castellanos-Ventura that the agency incorrectly applied the "unable or unwilling to control" standard, the petition for review is **GRANTED**, and the case is **REMANDED** to the BIA for proceedings consistent with this opinion.

H. Esteban Figueroa-Brusi, New York, NY, *for Petitioner*.

Brian Boynton, Principal Deputy Assistant Attorney General; Melissa Neiman-Kelting, Assistant Director; Jeffrey M. Hartman, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC, *for Respondent*.

PER CURIAM:

Petitioner Bessy Orbelina Castellanos-Ventura, a native and citizen of Honduras, seeks review of an April 19, 2021 decision of the Board of Immigration Appeals (BIA) affirming a February 26, 2019 decision of an Immigration Judge (IJ) denying her application for asylum, withholding of removal, and relief under the Convention Against Torture (CAT). *In re Bessy Orbelina Castellanos-Ventura*, No. A206 488 725 (B.I.A. Apr. 19, 2021), *aff'g* No. A206 488 725 (Immig. Ct. N.Y.C. Feb. 26, 2019). The agency assumed without deciding that Castellanos-Ventura had suffered past persecution on account of her membership in a cognizable social group of Honduran women and was abused as a child for much of the time relevant to this petition. It nevertheless

2

denied her asylum claim because it found that Castellanos-Ventura failed to show that the Honduran government was "unable or unwilling to control" her persecutors.

We agree with Castellanos-Ventura that the agency incorrectly applied the "unable or unwilling to control" standard in this case. First, the agency failed to consider whether it would have been futile for an abused child to seek protection from the Honduran government. Second, the agency failed to consider significant record evidence that the Honduran government was unable to protect children or women from intrafamilial and criminal violence. The petition for review is therefore **GRANTED**, and the case is **REMANDED** to the BIA for proceedings consistent with this opinion.[1]

## BACKGROUND

Castellanos-Ventura entered the United States without inspection in 2014 and was placed in removal proceedings. The following year, she applied for asylum, withholding of removal, and CAT relief. Relevant to this appeal,

---

[1] Our decision in this matter originally appeared in an unpublished summary order issued on July 11, 2024. Castellanos-Ventura subsequently moved to have our decision published. Because we are persuaded that this decision may be helpful to guide future cases if it has some precedential value, we grant the motion and publish our disposition.

Castellanos-Ventura asserted that she experienced past persecution on account of her status as a Honduran woman.

After an asylum hearing, the IJ found that Castellanos-Ventura had credibly testified that her mother had physically abused her starting at the age of seven and that her stepfather, grandfather, and uncle had thereafter sexually abused her. Castellanos-Ventura also credibly testified that she was threatened and raped multiple times by a local contract killer after she moved out of her family home. Castellanos-Ventura explained that she never reported the abuse to Honduran authorities because she did not believe that they would help her.

As an initial matter, the IJ assumed without deciding that Castellanos-Ventura's proposed social group of Honduran women was cognizable and that her abusers targeted her on account of membership in that group. The IJ nevertheless denied her application for asylum after finding that she failed to show that Honduran officials were unable or unwilling to prevent her persecution. The IJ emphasized that Castellanos-Ventura never attempted to report the abuse to the police, noted that Castellanos-Ventura's mother secured a restraining order against one of the sexual abusers, and also observed that the Honduran government worked to protect victims of rape and domestic violence.

4

Castellanos-Ventura's failure to sustain her asylum claim doomed her claim for withholding of removal, and the IJ's "unable or unwilling to control" finding also meant that Castellanos-Ventura could not prove government acquiescence as required for CAT relief. *See* 8 C.F.R. § 1208.18(a)(1).

Castellanos-Ventura appealed to the BIA, which adopted the IJ's reasoning that Castellanos-Ventura had not established that Honduran officials were unable or unwilling to protect her, affirmed the IJ's decision, and dismissed the appeal. Castellanos-Ventura filed a timely petition for review.

## DISCUSSION

Under the circumstances, we review the IJ's decision as modified by the BIA and do not address the findings the BIA declined to reach or found abandoned. *See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review factual findings for substantial evidence and questions of law and the application of law to fact *de novo*. *See Ojo v. Garland*, 25 F.4th 152, 159 (2d Cir. 2022). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

5

An applicant for asylum and withholding of removal has the burden to establish past persecution or fear of future persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42); *see also* 8 C.F.R. §§ 1208.13(a), 1208.16(b). Evidence of physical abuse and violence at the hands of government agents is relevant to whether the petitioner has experienced past persecution or has a well-founded fear of future persecution. *See Beskovic v. Gonzales*, 467 F.3d 223, 225–26 (2d Cir. 2006). "Private acts can also constitute persecution if the government is unable or unwilling to control such actions." *Pan v. Holder*, 777 F.3d 540, 543 (2d Cir. 2015).

In this case, the agency assumed, without deciding, that Castellanos-Ventura suffered harm rising to the level of persecution on account of her membership in a cognizable social group of Honduran women. But it found that Castellanos-Ventura failed to show that the Honduran government was "unable or unwilling to control" her persecutors and accordingly rejected her claim. "[A] denial of immigration relief stands or falls on the reasons given by the IJ or BIA because it would usurp the role of the agency for a reviewing court to assume a hypothetical basis for the IJ's determination, even one based in the record." *Lin*

6

*Zhong v. U.S. Dep't of Just.*, 480 F.3d 104, 117 (2d Cir. 2007) (quotation marks omitted), *abrogated on other grounds by Santos-Zacaria v. Garland*, 598 U.S. 411 (2023). We therefore address only the agency's "unable or unwilling to control" finding.

"Under the unwilling-or-unable standard, a finding of persecution ordinarily requires a determination that government authorities, if they did not actually perpetrate or incite the persecution, condoned it or at least demonstrated a complete helplessness to protect the victims." *Singh v. Garland*, 11 F.4th 106, 114–15 (2d Cir. 2021) (quotation marks omitted). "[F]ailure to report harm is not necessarily fatal to a claim of persecution if the applicant can demonstrate that reporting private abuse to government authorities would have been futile or dangerous." *Matter of C-G-T-*, 28 I. & N. Dec. 740, 743 (B.I.A. 2023) (quotation marks omitted); *cf. Quintanilla-Mejia v. Garland*, 3 F.4th 569, 593 (2d Cir. 2021) ("[F]ailure to ask for police help is not enough, by itself, to preclude a finding of acquiescence.").

In deciding that Castellanos-Ventura failed to show that Honduran officials were unable or unwilling to protect her from her abusive family and a criminal who repeatedly attacked her, the agency relied in part on the fact that

7

she never sought police protection even though her mother had successfully obtained a restraining order against an abuser. The agency reasonably relied in part on Castellanos-Ventura's failure to report. *See Matter of C-G-T-*, 28 I. & N. Dec. at 743; *see also Quintanilla-Mejia*, 3 F.4th at 593. But it failed to consider whether it would have been "futile or dangerous for an abused child," as Castellanos-Ventura was during much of her abuse, "to seek protection from the authorities." *Matter of C-G-T-*, 28 I. & N. Dec. at 743. The BIA itself has recognized that "[w]hen a child is being abused by a parent or relative, the child may be prevented by their abuser from contacting the authorities, or any attempt to report the harm might worsen the child's circumstances." *Id.*; *see also Portillo Flores v. Garland*, 3 F.4th 615, 635–36 (4th Cir. 2021) (directing the agency to "engage in a child-sensitive evaluation of whether [Petitioner] was justified in not seeking police protection" (quotation marks omitted)).

Beyond Castellanos-Ventura's failure to report the abuse and violence she suffered, the agency relied on one page of the State Department's 2017 Human Rights Report addressing rape and domestic violence against women. The agency drew from the report that the Honduran government was making efforts to protect women from violence given evidence that the state prosecutes rapists

8

and those who commit domestic violence, courts enforce penalties for rape and domestic violence, the state penalizes those who violate restraining orders, and the state has reporting centers for abused women in two cities. The agency erred, however, by relying on only this one source without acknowledging or evaluating conflicting evidence. *See Scarlett v. Barr*, 957 F.3d 316, 330 (2d Cir. 2020) (finding error in the agency's failure to mention evidence that "authorities, however willing, were nevertheless unable to protect [Petitioner] from gang violence"); *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) (requiring "a certain minimum level of analysis . . . if judicial review is to be meaningful"); *Tian-Yong Chen v. INS*, 359 F.3d 121, 130 (2d Cir. 2004) (finding error when the agency relies excessively on State Department reports without considering "any contrary or countervailing evidence with which it is presented, as well as the particular circumstances of the applicant's case demonstrated by testimony and other evidence").

Further, much of Castellanos-Ventura's claim was based on harm she suffered between ages seven and seventeen at the hands of family members, but the agency failed to mention or evaluate any evidence related to the state's ability to protect children who are subject to intrafamilial violence and abuse. That

9

evidence includes a report of the Immigration and Refugee Board of Canada that found that police complaint mechanisms are not effective and that penalties for intrafamily violence are very low, *see, e.g.*, *Regmi v. Barr*, 832 F. App'x 744, 747 (2d Cir. 2020) (concluding that the IJ reasonably relied on a report of the Immigration and Refugee Board of Canada); *accord Singh*, 11 F.4th at 111, 117, and the State Department's acknowledgement that, of the hundreds of homicides of children that occurred in the first half of 2017, eighty percent went unsolved. Similarly, insofar as Castellanos-Ventura was repeatedly attacked, raped, and threatened by a criminal, the agency did not evaluate the following evidence that criminals commit violence against women with impunity in Honduras: The Immigration and Refugee Board of Canada reported that some Honduran officials tell women not to file complaints because it would put them in more danger; a Latin American Research Review article concluded that reporting violence appeared to be useless for women given the lack of protection such reporting guaranteed, high impunity for criminals, and collaboration between government officials and criminals; Amnesty International reported that impunity is high in cases of violence against women because officials do not have the capacity or resources to investigate, prosecute, or punish criminals; Human Rights Watch reported that

10

the police and judiciary are mostly ineffective; and a Latin America Working Group report concluded that the vast majority of femicide cases are not investigated or prosecuted.

Although the agency acknowledged that violence against women is a problem in Honduras, its failure to acknowledge or discuss the evidence of the difficulties children and women face in reporting violence or the ineffectiveness of the government's response to such reports requires remand. *See Scarlett*, 957 F.3d at 330; *Poradisova*, 420 F.3d at 77; *Tian-Yong Chen*, 359 F.3d at 130. The agency's failure to consider relevant evidence also infects its denial of CAT relief because the agency relied entirely on the "unable or unwilling to control" finding to conclude that Castellanos-Ventura failed to establish the government acquiescence required for CAT relief. *See* 8 C.F.R. § 1208.18(a)(1); *see also Khouzam v. Ashcroft*, 361 F.3d 161, 171 (2d Cir. 2004).

## CONCLUSION

For the foregoing reasons, the petition for review is **GRANTED**, and the case is **REMANDED** to the BIA for further proceedings consistent with this opinion.

11