Quituisaca-Quito v. Blanche

BIA
Chung, IJ
A240 479 342/343/344

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of April, two thousand twenty-six.

PRESENT:
> JOHN M. WALKER, JR.,
> RAYMOND J. LOHIER, JR.,
> BETH ROBINSON,
> *Circuit Judges.*

_____

DAVID MAURICIO QUITUISACA-QUITO, LOURDES SUSANA AREVALO-CABRERA, A. J. Q. A.,
> *Petitioners*,

v.

TODD BLANCHE, ACTING UNITED STATES ATTORNEY GENERAL,

24-59 (L),
24-3240 (Con)
NAC

*Respondent.*[*]

_____

FOR PETITIONERS:        Paul O'Dwyer, Law Office of Paul O'Dwyer
                        P.C., New York, NY.

FOR RESPONDENT:         Brett A. Shumate, Assistant Attorney General,
                        Anthony C. Payne, Assistant Director, Jeffrey
                        R. Leist, Senior Litigation Counsel, Liza S.
                        Murcia, Attorney, Office of Immigration
                        Litigation, Civil Division, United States
                        Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the lead petition for review is GRANTED, and the consolidated petition is DISMISSED as moot.

Petitioners David Mauricio Quituisaca-Quito, Lourdes Susana Arevalo-Cabrera, and their minor child, natives and citizens of Ecuador, seek review of two BIA decisions: a December 4, 2023 decision affirming a March 3, 2023 decision of an Immigration Judge ("IJ") denying asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"), *In re David Mauricio Quituisaca-Quito, et al.*, Nos. A240 479 342/343/344 (B.I.A. Dec. 4, 2023), *aff'g* Nos. A240 479

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Todd Blanche is automatically substituted for former Attorney General Pamela Bondi, as Respondent.

2

342/343/344 (Immig. Ct. N.Y. City Mar. 3, 2023); and a November 29, 2024, decision denying their motion to reopen based on ineffective assistance of counsel, *In re David Mauricio Quituisaca-Quito, et al.*, Nos. A240 479 342/343/344 (B.I.A. Nov. 29, 2024). We assume the parties' familiarity with the underlying facts and procedural history.

Because the BIA summarily affirmed the IJ's decision, we review the IJ's decision as the final agency determination. *See Shunfu Li v. Mukasey*, 529 F.3d 141, 146 (2d Cir. 2008). We review fact-finding "under the substantial evidence standard," and we generally review questions of law de novo. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018); *see also Urias-Orellana v. Bondi*, 146 S. Ct. 845, 851 (2026) (clarifying that some applications of law to fact, including "agency's determination whether a given set of undisputed facts rises to the level of persecution[,]" are reviewed under a substantial evidence standard). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

As relevant here, Quituisaca-Quito alleged past persecution based on his membership in a particular social group of "dark skinned Ecuadorians." Cert. Admin. R. 195; *see id.* at 152. The IJ concluded that his past harm rose to the level

3

of persecution but nonetheless denied his claim after finding that this social group was not cognizable because it was not socially distinct, and alternatively, that Quituisaca-Quito failed to establish that the Ecuadorian government would be unwilling or unable to protect him. For the reasons set forth below, we remand for further review, including consideration of relevant country conditions evidence and intervening decisions from this Court and the BIA.

## I. Nexus

An applicant for asylum and withholding of removal has the burden to establish past persecution or a fear of future persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1)(B)(i), 1231(b)(3)(A), (C). Where the protected ground is a proposed social group, an applicant must also establish that the group is cognizable. *See Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014). A cognizable group is "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Id*. at 196 (quoting *In re M-E-V-G-*, 26 I. & N. Dec. 227, 237 (B.I.A. 2014)).

4

Quituisaca-Quito did not explicitly press race as a protected ground. Instead, he framed his claim as a social group based on racial characteristics. But he alleged facts that supported race as the relevant protected ground, and the IJ acknowledged that his proposed social group was based on the "immutable characteristic[] of race." Cert. Admin. R. 120. The IJ also acknowledged that Quituisaca-Quito's factual allegations implicated race, noting that Quituisaca-Quito's family members called him "negro" and "negro burro," and that he claimed to "experience[] discrimination at school because of his race" where "[h]is classmates made fun of the color his skin and the thickness of his lips, and organized fights among students to force him to fight." *Id.* at 117 (citation modified).

Despite finding that race, which itself is a protected ground for asylum, was the immutable characteristic being alleged, the IJ then found that the proposed group was not cognizable. We identify two errors that warrant remand to the agency.

First, in concluding that Quituisaca-Quito had not shown that Ecuadorian society perceived his group as socially distinct, the IJ provided no analysis and failed to address country conditions evidence that discussed discrimination and

5

violence against racial minorities in Ecuador, including indigenous people and "Afro-Ecuadorian[s]," as well as "Montubio (an independent ethnic group of persons with a mixture of Afro-Ecuadorian, indigenous, and Spanish ancestry)." Cert. Admin. R. 224; *see Doe v. Sessions*, 886 F.3d 203, 211 (2d Cir. 2018) (remanding CAT claim where agency "overlooked key evidence and mischaracterized the record"); *Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) (explaining that the agency must provide "a certain minimum level of analysis . . . if judicial review is to be meaningful[]" and remanding for further inquiry). Given this evidence of discrimination and stereotyping, and absent further analysis, it is unclear to us how "dark skinned Ecuadorians" who share an immutable characteristic of race could not be perceived as a distinct group. Cert. Admin. R. 120.

Second, given the acknowledgment that race was an immutable characteristic and the allegations that perceived race was the basis for the past harm alleged here, the agency should have considered whether there was a nexus to race, without the additional lens of a particular social group, because race is itself a protected ground for asylum and withholding of removal. *See Matter of W-Y-C- & H-O-B-*, 27 I. & N. Dec. 189, 191 (B.I.A. 2018) (requiring IJ to seek clarification if a proposed social group is not clear); *see also Cruz v. Whitaker*, 758 F.

6

App'x 169, 170–71 (2d Cir. 2019) (summary order) (remanding to consider whether there was a pattern or practice of persecution because, although applicant did not use the words pattern or practice, the analysis of that claim and the proposed social group overlapped).  The Government's argument that Quituisaca-Quito does not identify as a racial minority is misplaced because "[w]hether the requisite nexus exists depends on the views and motives of the persecutor," not the petitioner. *Paloka*, 762 F.3d at 196–97 (quotation marks omitted).

## II.     Unable or Unwilling to Protect

The IJ alternatively found that Quituisaca-Quito failed to demonstrate that the Ecuadorian authorities were unwilling or unable to protect him.  Absent error, this finding could be an independent dispositive basis for denying relief.  "To qualify as 'persecution' the conduct at issue must be attributable to the government, whether directly because engaged in by government officials, or indirectly because engaged in by private persons whom the government is 'unable or unwilling to control.'"  *Singh v. Garland*, 11 F.4th 106, 114 (2d Cir. 2021) (quoting *Scarlett v. Barr*, 957 F.3d 316, 328 (2d Cir. 2020)).  We cannot conclude that this ground renders remand futile.

7

Quituisaca-Quito argues that the agency erred in light of intervening authority, *Castellanos-Ventura v. Garland*, 118 F.4th 250 (2d Cir. 2024) and *Matter of C-G-T-*, 28 I. & N. Dec. 740 (B.I.A. 2023). In *C-G-T-*, the agency held that "failure to report harm is 'not necessarily fatal' to a claim of persecution if the applicant 'can demonstrate that reporting private abuse to government authorities would have been futile' or dangerous." *Matter of C-G-T-*, 28 I. & N. Dec. at 743 (quoting *Rosales Justo v. Sessions*, 895 F.3d 154, 165 (1st Cir. 2018)). We subsequently agreed. *See Castellanos-Ventura*, 118 F.4th at 254. We concluded that the agency reasonably relied on Castellanos-Ventura's failure to report the abuse she suffered as a child, but we remanded because "it failed to consider whether it would have been 'futile or dangerous for an abused child,' as Castellanos-Ventura was during much of her abuse, 'to seek protection from the authorities.'" *Id.* (quoting *Matter of C-G-T-*, 28 I. & N. Dec. at 743). We also held that the agency erred by relying on one page of the country conditions evidence to conclude that the government was willing to help victims of domestic violence, where it failed to acknowledge or evaluate conflicting evidence. *Id*. at 254–55. Finally, we found error because "much of Castellanos-Ventura's claim was based on harm she suffered between ages seven and seventeen at the hands of family members, but the agency failed to mention

8

or evaluate any evidence related to the state's ability to protect children who are subject to intrafamilial violence and abuse." *Id*. at 255.

We similarly remand for the agency to consider the intervening authority. *See, e.g., Biao Yang v. Gonzales*, 496 F.3d 268, 271 (2d Cir. 2007) (remanding for BIA to reconsider decision that asylum application was frivolous given intervening precedential BIA decision setting down standards for such decisions). Here, the IJ found "no evidence in the record that indicates that police could not protect [Quituisaca-Quito] from his abusers at home, school or work" and cited the 2021 State Department Human Rights Report, which provides that "the law criminalizes child abuse and provides penalties of 30 days to 26 years in prison, depending on the severity of the abuse." Cert. Admin. R. 118. The IJ cited the same report to find that the law also criminalizes sexual harassment. *Id.* But the IJ provided no further explanation in its unable-or-unwilling-to-protect analysis. The IJ did not mention that Quituisaca-Quito's family members called him "negro" and "negro burro," which suggested both that he may have been abused at home and that the family members might not have been helpful in stopping abuse from others based on his skin color. *See id.* at 117. Nor did the IJ acknowledge conflicting portions of the State Department Report, which stated,

9

among other things, that there was a "lack of investigation of and accountability for violence against women and children" and "[t]hat racism and discrimination continued against indigenous peoples and Afro-descendants despite government policies promoting equality." *Id.* at 199, 224. The agency erred by relying on one source, without acknowledging or evaluating conflicting evidence. *See Castellanos-Ventura*, 118 F.4th at 254–55; *Poradisova*, 420 F.3d at 82 (requiring "a good-faith *inquiry* into whether an applicant is entitled to this country's protection," and emphasizing that the asylum application process "should never resemble 'a search for a justification to deport'" (emphasis in original)); *Tian-Yong Chen v. INS*, 359 F.3d 121, 130 (2d Cir. 2004) (finding error where agency relied on State Department reports without considering "contrary or countervailing evidence . . . as well as the particular circumstances of the applicant's case demonstrated by testimony and other evidence").

We therefore grant the lead petition for review and remand to the BIA for further consideration of the nexus and unable-or-unwilling-to-protect findings. Given this remand, we deny the consolidated petition as moot. *See Koudriachova v. Gonzales*, 490 F.3d 255, 264 (2d Cir. 2007).

10

For the foregoing reasons, the lead petition for review is GRANTED, the BIA's December 4, 2023, decision is VACATED, and the case is REMANDED. The consolidated petition is DISMISSED as moot. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court